# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581

| | |
|---|---|
| Appellate Court Caption | EDWARD SAMUELSON, Objector-Appellant, v. COOK COUNTY OFFICERS ELECTORAL BOARD, and its Members, DAVID ORR, Chairman, by and Through his Designee, Daniel P Madden, ANITA ALVAREZ, by and Through her Designee, Patrick Driscoll, and DOROTHY BROWN, by and Through her Designee, Catherine Zaryczny; DAVID ORR, in His Official Capacity as Cook County Clerk, and TOMMY BREWER, Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-0581 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | March 30, 2012<br><br>April 25, 2012<br>April 27, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The decision of the Cook County Officers Electoral Board overruling an objection to a judicial candidate's nominating papers based on the inclusion of a single petition sheet for a different candidate seeking a different office in the judicial candidate's papers was affirmed, since even after objections were sustained to 3,003 signatures, the petition had more than the 1,000 signatures required, the nomination papers were in substantial compliance with the Election Code, substantial compliance is acceptable when the objection involves a technical violation, the objection in the instant case was based on a single sheet out of several hundred, the candidate did not "completely ignore" any provisions of the Election Code, there was no evidence of wrongdoing or bad intent, any errors were *de minimis*, and there was no evidence of disenfranchisement or constitutional violations. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-COEL-08; the Hon. Edmund Ponce de Leon, Judge, presiding. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | James P. Nally, of Chicago, for appellant. |
| | Steven M. Laduzinsky, of Chicago, for appellees. |
| Panel | JUSTICE J. GORDON delivered the judgment of the court, with opinion. |
| | Presiding Justice Epstein and Justice McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1 Objector, Edward Samuelson, filed an objector's petition to the nomination papers of the candidate, Tommy Brewer, as a candidate for the Democratic Party nomination for the office of judge of the Cook County Circuit Court, 7th Judicial Subcircuit (Starks Judicial Vacancy), in the March 20, 2012 general primary election. Samuelson argued that because a single petition sheet for a different candidate seeking a different office was included in Brewer's papers, Brewer's candidacy was invalid. The Cook County Officers Electoral Board (the Board) overruled Samuelson's objections and Samuelson filed a petition for judicial review. The circuit court affirmed the Board's decision and Samuelson appealed. For the reasons that follow, we affirm the decision of the Board.

¶ 2                         I. BACKGROUND

¶ 3 On November 28, 2011, Brewer filed his nomination papers for the Starks Judicial Vacancy for the March 20, 2012 Democratic general primary election. Included with his papers were 428 consecutively numbered pages of petition sheets containing a total of 4,242 signatures. Each page, with one exception, contained space for 10 signatures, as well as uniform page headings and signature lines. Page 176 of Brewer's petition sheets contained 15 signatures and designated another candidate, Nichole C. Patton, running for a different judicial office, namely, "Judge of the Circuit Court to fill the vacancy of the Honorable Margaret O'Mara Frossard," in the March 20, 2012 primary. Brewer states that this page was inadvertently included in his nomination papers.

¶ 4     Samuelson filed an objector's petition challenging Brewer's candidacy on December 12, 2011. In addition to contesting the validity of a number of individual signatures in Brewer's nomination papers, the final paragraph of his objector's petition stated:

"Pursuant to Illinois law in the Election Code, the page numbers of the candidate's nomination petitions must be consecutively numbered. The petition sheets presented by this candidate contained a sheet number 176 which is not a nomination petition for this candidate, but rather is a nomination petition for a candidate Nicole C. Patton seeking a countywide circuit court vacancy of the Hon. Margaret O'Mara Frossard. The petition sheets of this candidate are therefore in violation of the law as that they are not consecutively numbered petition pages for this candidate for this vacancy. All petition sheets after the petition sheet for this candidate numbered 175 must be stricken and held for naught in their entirety. The candidate taste [*sic*] on the allegations of this Objector's Petition would not have enough valid signatures contained on the first 175 pages of the nomination petitions he submitted to qualify to be placed upon the ballot."

¶ 5     Brewer's nomination papers were subjected to a records examination held between January 6-9, 2012. The examiners sustained objections to 3,003 signatures out of 4,242 submitted, leaving Brewer with 1,239 valid signatures, 239 more than the 1,000 signatures required for a valid petition. Both parties then submitted briefs to the Board on the issue of page 176. The parties both agreed at oral argument before the Board that the signatures on page 176 were not included in Brewer's 1,239 signature total. The Board then voted unanimously to adopt the findings of the examiners as to the number of valid signatures in Brewer's nomination papers, but overruled Samuelson's objection that the presence of a non-conforming petition page ought to disqualify Brewer's entire candidacy. The Board held that the presence of page 176 did not render Brewer's candidacy invalid and that his petition substantially complied with the Election Code (10 ILCS 5/1-1 to 30-3 (West 2008)). The Board therefore ordered that Brewer's name be printed on the primary election ballot.

¶ 6     Samuelson timely sought judicial review of the Board's decision in the circuit court. There, he argued that the Board erred in applying a substantial compliance standard to page 176 when it should have applied a strict compliance standard in order to preserve the integrity of the petition process. He further alleged, in the alternative, that if substantial compliance was the proper standard, the Board nevertheless improperly applied it to Brewer's papers. He finally argued that page 176 risked disenfranchising its signatories by depriving the candidate whom they intended to support of the benefit of their signatures, stating "the rights of voters must trump Brewer's right to ballot access." Affirming the decision of the Board, the circuit court held that because the requirements of the Election Code "may be only substantially, and not strictly, complied with as long as the violations are technical in nature and do not prevent a fair election," and because Brewer's nomination papers were in substantial compliance, there was "no clearly erroneous error in the Electoral Board's decision to overrule the objections of [Samuelson] and allow [Brewer] to be placed on the ballot." It is this decision which Samuelson now appeals.

## II. ANALYSIS

¶ 8    On appeal, Samuelson reiterates his primary arguments made before the circuit court, namely, that the Board failed to apply the proper standard, strict compliance, to Brewer's nomination papers, and that even if the standard applied by the Board was the correct one, Brewer's nomination papers nevertheless failed to substantially comply with the Election Code. He further alleges the trial court erred by upholding the Board's decision because the inclusion of page 176 disenfranchised the 15 voters who signed that page, thereby violating their constitutional rights. He finally contends, for the first time on this appeal, that due to the presence of page 176, Brewer's nomination papers were not in apparent conformity with the Election Code and, therefore, never should have been certified by the county clerk.

¶ 9    Brewer, on the other hand, first argues that this court lacks subject matter jurisdiction to consider several of Samuelson's arguments that were not initially alleged in his objector's petition. He further argues that the Board did not err when it determined the proper standard of review to be substantial compliance, rather than strict compliance, and subsequently found Brewer's petition to be in substantial compliance with the Election Code. Brewer also asserts that his nomination papers were in apparent conformity with the Election Code when filed and therefore cannot now be challenged. He finally argues that the inclusion of page 176 in his petition did not result in disenfranchisement or constitutional violations. For the reasons that follow, we affirm the decision of the Board.

### A. Standard of Review

¶ 11    On appeal, we are required to review the Board's, rather than the circuit court's, decision. *Lockhart v. Cook County Officers Electoral Board*, 328 Ill. App. 3d 838, 841 (2002). The Board's findings of fact are deemed *prima facie* true and correct and will not be overturned unless they are against the manifest weight of the evidence; its findings of law are not binding on this court and will be reviewed *de novo*. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210-11 (2008). Decisions on mixed questions of law and fact, such as the Board's application of a legal standard to Brewer's nomination papers, will only be reversed if they are clearly erroneous. *Cinkus*, 228 Ill. 2d at 211. A decision is clearly erroneous when a reviewing court holds a "definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cinkus*, 228 Ill. 2d at 211.

### B. Substantial Compliance

¶ 13    Samuelson primarily contends that the Board failed to apply the proper standard, strict rather than substantial compliance, to Brewer's petition, and thus improperly ruled that it complied with the Election Code. He argues that section 7-10 of the Election Code, which provides that petition sheets should meet certain *formalistic* requirements in "substantially the following form," nevertheless also provides for certain *substantive* requirements which must be strictly complied with. See 10 ILCS 5/7-10 (West 2008). Before we consider this argument, we must address Brewer's contention that we lack subject matter jurisdiction over this issue because Samuelson's claims that Brewer's entire candidacy should be invalidated

based on the inclusion of page 176 were never validly raised in his objector's petition, which only alleged invalid numbering and an insufficient number of signatures. For the reasons that follow, we find that we do have jurisdiction, but nevertheless agree with Brewer that the Board correctly determined that substantial compliance was the proper standard by which to evaluate his nomination papers.

¶ 14 An electoral board "is a creature of statute and may exercise only those powers conferred upon it by the legislature." *Delay v. Board of Election Commissioners*, 312 Ill. App. 3d 206, 209 (2000) (citing *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988)). Section 10-8 of the Election Code explains that an "objector's petition *** shall state fully the nature of the objections to the certificate of nomination or nomination papers." 10 ILCS 5/10-8 (West 2008). The Board "will only consider written objections and the written specifications of such objections to the original petitions, as set forth in the objector's petition." 10 ILCS 5/10-8 (West 2008). The role of an electoral board is to "decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether the objections thereto should be sustained." 10 ILCS 5/10-10 (West 2008).

¶ 15 It therefore follows that it is "the unique province of the objector" to "raise issues and objections" to the certificate of nomination or nomination papers in his objector's petition. *Mitchell v. Cook County Officers Electoral Board*, 399 Ill. App. 3d 18, 27 (2010). An electoral board cannot "raise its own objections to nominating petitions *sua sponte*." *Delay*, 312 Ill. App. 3d at 210; accord *Mitchell*, 399 Ill. App. 3d at 27.

¶ 16 In *Delay*, the objector's petition challenged the candidate's nomination papers on two separate grounds; first that the candidate had insufficient signatures, and second that he was ineligible to be a candidate by reason of a prior felony conviction. *Delay*, 312 Ill. App. 3d at 207. When the matter came before the Board, the objector's attorney attempted to raise a new objection to the candidacy, namely, that the candidate had pled guilty to a felony, which was unrelated to any of the allegations in the objector's petition. *Delay*, 312 Ill. App. 3d at 207. The Board found that because of this plea, the candidate was ineligible to be on the ballot, and the circuit court agreed. The appellate court concluded that the Board lacked the authority to invalidate the nomination papers on the basis of the candidate's plea agreement because no objection to that plea agreement was raised in the objector's petition *Delay*, 312 Ill. App. 3d at 210.

¶ 17 Setting forth the principles that determine the scope of the Board's jurisdiction, the *Delay* court adopted an expansive view of that jurisdiction, holding that the Board may consider new objections to nomination papers so long as they "fell within the nature of the objection made." *Delay*, 312 Ill. App. 3d at 210. The Board however, exceeds its statutory authority when it invalidates a candidate's "nomination papers on a ground never raised in the objection." *Delay*, 312 Ill. App. 3d at 210.

¶ 18 Here, one could argue that predicated on the supposition that strict compliance is necessary and thereby "fell within the nature of the objection made" is the argument made in Samuelson's objector's petition that petition sheets, and page 176 in particular, must strictly comply with the provisions of the Election Code and that a failure to do so invalidates Brewer's entire candidacy. While it is arguable that this contention arguably may fall "within

the nature" of his initial objection in paragraph 24 of his objector's appeal, thereby providing us with jurisdiction to consider the issue, we nevertheless agree with Brewer's alternative argument that the Board properly applied the correct "substantial compliance" standard to his petition.

¶ 19    Samuelson asserts that substantial compliance is the inappropriate standard when violations of the Election Code are substantive, rather than technical, in nature. He contends that the pagination and heading requirements laid out in section 7-10, which page 176 allegedly violated, are substantive and therefore must be strictly complied with. We disagree.

¶ 20    Our courts have previously held that "substantial compliance with the Election Code is acceptable when the invalidating charge concerns a technical violation ***. But substantial compliance is not operative to release a candidate from compliance with the provisions intended by the legislature to guarantee a fair and honest election." *Madden v. Schumann*, 105 Ill. App. 3d 900, 903-04 (1982). Strict compliance has been found applicable where the requirements of the Election Code "contribute substantially to the integrity of the election process." *Craig v. Peterson*, 39 Ill. 2d 191, 196 (1968) (holding that uninitialed absentee ballots which did not comply with certain provisions of the Election Code should have been counted because the presence or absence of an election judge's initial on those ballots did not affect the integrity of the election).

¶ 21    Here, Samuelson has provided no persuasive authority to support his contention that the requirements of section 7-10, regarding proper numbering and headings on petition sheets, are substantive in nature and therefore must be strictly complied with. Instead, he seeks to rely upon cases where candidates failed to comply at all with certain provisions of the Election Code. For example, in *North*, the candidate completely failed to file a required statement of candidacy, thus causing the Board to invalidate his entire candidacy. *North v. Hinkle*, 295 Ill. App. 3d 84 (1998). See also *Bolger v. Electoral Board*, 210 Ill. App. 3d 958 (1991) (candidate's failure to file receipts for his statements of economic interest invalidated his candidacy); *Lawlor v. Municipal Officer Electoral Board*, 28 Ill. App. 3d 823, 829 (1975) (finding the candidate's petition invalid because his statement of candidacy "was totally lacking in the essential elements required by the Legislature").

¶ 22    Unlike the violations in the aforementioned cases, which involved wholesale departures from the requirements of the Election Code that threatened the integrity of the election process, and thus were evaluated for strict compliance, the inclusion of one nonconforming petition sheet out of many cannot, by any stretch of the imagination, constitute a complete disregard for the provisions of section 7-10, justifying the application of such a rigorous standard. See *Jones v. Dodendorf*, 190 Ill. App. 3d 557, 561 (1989) ("While substantial compliance with the provisions of the Election Code has been held to be sufficient, *** we do not believe that a candidate who completely ignores one of the statutory elements can be said to have 'substantially complied' with it."); *Havens v. Miller*, 102 Ill. App. 3d 558, 568 (1981) (the omission of a circulator's affidavit, a "primary safeguard[ ] against fraudulent [petitions]," constituted a complete failure to comply with a statutory requirement). Instead, when only one petition sheet out of several hundred fails to comply with section 7-10, the errors with respect to that single sheet are merely technical in nature and should be reviewed under a standard of substantial, not strict, compliance. See *King v. Justice Party*, 284 Ill.

App. 3d 886, 890 (1996) (holding that because improper numbering on 18 petition sheets was a "mere technicality," the candidate's petition substantially complied with the Election Code). We find support for this conclusion in the cases cited by Brewer, where courts have repeatedly found that substantial compliance was the proper standard to apply to similar, technical violations of the Election Code.

¶ 23 In *Stevenson*, the candidate failed to properly number his petition sheets as mandated by section 7-10. Affirming the Board's decision to nevertheless allow the candidate's name on the ballot, the appellate court concluded that the candidate substantially complied with the requirements of the Election Code, and "the technical deficiencies asserted by [the objector] were insufficient to require [the candidate's] name to be removed from the ballot." *Stevenson v. County Officers Electoral Board*, 58 Ill. App. 3d 24, 27 (1978). See also *Lewis v. Dunne*, 63 Ill. 2d 48 (1976) (substantial compliance found even though the candidate failed to specify in his statement of candidacy, as required by section 7-10); *Madden v. Schumann*, 105 Ill. App. 3d 900 (1982) (holding that substantial compliance is the proper standard to assess technical violations of section 7-10, including provisions requiring petitions to be signed by a registered voter); *Panarese v. Hosty*, 104 Ill. App. 3d 627, 630 (1982) (even though some, but not all, of the candidate's petition sheets contained information required by section 7-10, those requirements were technical in nature and the candidate's petition nevertheless substantially complied with that section).

¶ 24 Additional support for the application of a substantial compliance standard is found in the language of the Election Code itself which, in imposing the proper format for petition sheets, states that they must substantially conform to certain requirements. Section 7-10 of the Election Code provides, in relevant part:

"The name of no candidate for nomination, or State central committeeman, or township committeeman, or precinct committeeman, or ward committeeman or candidate for delegate or alternate delegate to national nominating conventions, shall be printed upon the primary ballot unless a petition for nomination has been filed in his behalf as provided in this Article in substantially the following form ***." 10 ILCS 5/7-10 (West 2008).

¶ 25 Section 7-10 then proceeds to state several requirements for petition sheets, including that they:

"shall be of uniform size and shall contain above the space for signatures an appropriate heading giving the information as to name of candidate or candidates, in whose behalf such petition is signed; the office, the political party represented and place of residence; and the heading of each sheet shall be the same." 10 ILCS 5/7-10 (West 2008).

¶ 26 That section goes on to provide that the petition sheets "shall be neatly fastened together in book form, by placing the sheets in a pile and fastening them together at one edge in a secure and suitable manner, and the sheets shall then be numbered consecutively." 10 ILCS 5/7-10 (West 2008).

¶ 27 Samuelson, however, contends that the "in substantially the following form" language does not apply to all of section 7-10, but instead is only applicable to the "formalistic" requirements immediately following it, rather than the "substantive" requirements regarding

uniform size and numbering. He asserts that while substantial compliance applies to the former part of the statute, with respect to the later part, a strict compliance standard is required. This interpretation of section 7-10 runs contrary to rules of statutory construction, as well as decades of established law on the subject.

¶ 28    Principles of statutory construction require us to give the language of the Election Code its "plain, ordinary and popularly understood meaning." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). It is axiomatic that "[a]ll provisions of a statutory enactment are viewed as a whole. [Citation.] Accordingly, all words and phrases must be interpreted in light of other relevant provisions of the statute and *must not be construed in isolation*. [Citation.] Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous. [Citation.]" (Emphasis added.) *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007).

¶ 29    Thus, under these rules and the plain language of the statute, we find that section 7-10 requires only substantial, rather than strict, compliance. A sensible reading of that section leads to the conclusion that the aforementioned language applies to all, not some, of that section's requirements. The fact that some of those requirements are mandatory, as evidenced by the statute's use of the word "shall," is no bar to the application of this standard. Our courts have repeatedly recognized that substantial, rather than strict, compliance is the proper standard by which to evaluate deviations from certain mandatory provisions of the Election Code. *King v. Justice Party*, 284 Ill. App. 3d 886, 890 (1996).

¶ 30    In *King*, the objector argued that the candidate's name should not be placed on the primary ballot because the candidate did not comply with the mandatory consecutive page numbering provisions of section 10-4 of the Election Code, which provided that " '[a]ll petitions for nomination *** shall in addition to other requirements provided by law, be as follows: *** the sheets shall *** be numbered consecutively.' 10 ILCS 5/10-4 (West 1994)." *King*, 284 Ill. App. 3d at 890. The Board disagreed and the candidate appealed. Upholding the Board's decision, the appellate court found that even though the provisions of section 10-4 were mandatory, the majority of the candidate's petition complied with those requirements and thus substantially complied with the Election Code. The court specifically noted that the candidate's "[c]ompliance was not strict, it was substantial; but it was compliance nonetheless." *King*, 284 Ill. App. 3d at 891.

¶ 31    Notably, unlike section 7-10, the provision of the Election Code at issue in *King* does not contain explicit language regarding substantial compliance, yet the court still applied that standard to the candidate's petition. See 10 ILCS 5/10-4 (West 1994). As the appellate court pointed out in *Wollan v. Jacoby*, a case cited by Samuelson, "[a]lthough section 7-10 contains similar language to section 10-4 concerning page numbering, it does not contain a penalty provision as provided in section 10-4. In addition, it uses 'substantial compliance'-type language, rather than 'shall' language, indicating the statutory requirements are directory, and not mandatory." *Wollan v. Jacoby*, 274 Ill. App. 3d 388, 394 (1995). Thus, even if we were to accept Samuelson's argument that the "in substantially the following form" language does not apply to section 7-10 as a whole, which we do not, we would nevertheless find that, under *King*, a "substantial compliance" standard still applies to the requirements of section 7-10.

¶ 32    We therefore find that the Board properly determined substantial, not strict, compliance to be the proper standard for evaluating violations of section 7-10's pagination and heading requirements.

¶ 33                    C. Substantial Compliance of Brewer's Petition

¶ 34    As stated above, Samuelson contends that the inclusion of page 176 in Brewer's nomination papers deviated from several statutorily mandated requirements regarding the uniformity of page headings and the consistency of numbering on petition sheets. He claims that because page 176 violated these provisions, the Board erred when it found Brewer's nomination papers to be in substantial compliance with section 7-10. We disagree.

¶ 35    We note that we may only reverse the Board's decision to apply the substantial compliance standard if it is clearly erroneous. *Cinkus*, 228 Ill. 2d at 211.

¶ 36    When a deviation from the Code is minor or technical in nature, and does not defeat the thrust, purpose, and effect of the statute, or "affect the legislative intent to guarantee a fair and honest election," it will not render that petition invalid. *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 461 (2008). A candidate is deemed not to be in substantial compliance with the Election Code when he "completely ignores one of the statutory elements." *Jones v. Dodendorf*, 190 Ill. App. 3d 557, 561 (1989). "[A] nominating petition may be read as one complete document in order to achieve substantial compliance with the statute ***." *Madden v. Schumann*, 105 Ill. App. 3d 900, 902 (1982).

¶ 37    Here, the record clearly indicates that Brewer did not "completely ignore" any provisions of the Election Code. While there is no dispute that page 176 of his nomination papers did not explicitly comply with every provision of section 7-10, the record is clear that the other 427 signature sheets did, in fact, comply.[1] Essentially, Samuelson argues that because one out of 428, or approximately one quarter of one percent, of Brewer's nominating sheets failed to comply with the Election Code, the Board erred in finding that his entire petition substantially complied with the code. We are unwilling to accept this contention.

¶ 38    Here, all of the violations that Samuelson alludes to pertain to one single page fortuitously included in Brewer's nomination papers. Contrary to Samuelson's thinly veiled suggestions of misconduct, we note that no evidence of wrongdoing or bad intent was established in connection with the insertion of that page, nor would such misconduct be plausibly inferred from its mere presence. Despite repeatedly referring to the inclusion of page 176 as a "tactic," accusing Brewer of "us[ing] another candidate's qualified voter signatures to advance [his] own candidacy," the record indicates that Samuelson conceded

---

[1]In his brief, Samuelson raises for the first time the argument that *other* petition sheets failed to substantially comply with section 7-10 because Brewer "employed two different headings." Not only is this argument waived, as it was not raised at any point below (*Cook County Board of Review v. Property Tax Appeal Board*, 403 Ill. App. 3d 139, 144-45 (2010)), even if we were to consider it, we would find that the headings of these other pages substantially complied with the Election Code because, as Samuelson admits, "[t]he differences among the page headings supporting [Brewer's] candidacy was a technical error."

that the signatures on page 176 were not considered when calculating Brewer's total.

¶ 39 It is an objector's burden to present evidence of a candidate's wrongdoing, and here, Samuelson has utterly failed to carry that burden. See *King*, 284 Ill. App. 3d at 889. Thus, the inclusion of page 176 merely represents a minor technical deviation, one that cannot be deemed to jeopardize the integrity of the election process. See *Williams v. Butler*, 35 Ill. App. 3d 532, 535 (1976) (pagination requirements "cannot be said in any way to relate to preservation of the integrity of the electoral process"). Nor is there any indication that the inadvertent inclusion of page 176 in Brewer's nomination papers would result in voter confusion. Based on the page's clear headings, which indicate a specific candidate, office, and vacancy, the signatories to that page would have been fully aware of the candidate for whom they were signing a petition since, as the Board noted, petition signers only see the petition sheet in front of them. Moreover, Brewer's nomination papers, when read as a whole, make abundantly clear which office he is seeking. *Salgado v. Marquez*, 356 Ill. App. 3d 1072 (2005).

¶ 40 We find support for our decision in *Hendon*, where the Board was faced with a similar case to the one at bar. *Hendon v. Davis*, 02-EB-SS-10 (Chicago Electoral Board Jan. 25, 2002). There, the candidate included a single petition sheet for another candidate in his nomination papers and the objectors filed an objection, arguing that the inclusion of that sheet "violates the requirement that all sheets be uniform and further alleges that the inclusion of [that sheet] places all of the sheets out of sequence and violates Section 7-10." *Hendon*, No. 02-EB-SS-10, at 2. The objectors alternatively argued that all sheets after the at issue sheet be ignored. Overruling the objectors' arguments, the Board held:

> "The inclusion of one sheet for another candidate is insufficient to invalidate the nominating papers in their entirety. Rather, the proper remedy is to ignore the aberrant sheet. The candidate has substantially complied with the uniformity requirements of Section 7-10 and there is no evidence that the candidate specified on [the aberrant sheet] intended the nominating papers in the instant matter to represent his own set of nominating papers. Further, the nominating papers are numbered and any sequencing flaw created by the aberrant sheet is *de minimis* and insufficient to invalidate any sheet other than [the aberrant sheet]." *Hendon*, No. 02-EB-SS-10, at 3.

¶ 41 Here, as in *Hendon*, any errors created by the inclusion of page 176 were *de minimis*. With the exception of that one page, all of Brewer's other petition sheets were in compliance with the provisions of section 7-10. It is also worth noting that despite being for another candidate, page 176 nevertheless maintained consecutive numbering with the rest of the sheets in Brewer's papers. Consequently, we are unable to say that Brewer's petition, when viewed as one complete document, completely ignored any element of the Election Code and, therefore, find that the Board did not err when it found Brewer's petition was in substantial compliance with the Election Code.

¶ 42                      D. Interference With Fundamental Rights

¶ 43 Samuelson finally argues that the inclusion of page 176 in Brewer's nomination papers interfered with the fundamental rights of voters to "participate in petitioning the government

to place their candidate of choice on the ballot." Specifically, he contends that "allowing a primary candidate to use the original signatures of qualified voters to place a different candidate on the ballot risks disenfranchising voters who signed that petition and violating the Equal Protection clause."

¶ 44    Brewer, however, argues, as he did before the circuit court, that there are no issues of disenfranchisement or constitutional violations based on the presence of page 176 in his nomination papers, instead asserting that its inclusion was merely a technical error. Alternatively, he argues that his right to be on the primary ballot outweighs any concerns over minor violations of the Election Code. We agree with Brewer.

¶ 45    " '[B]allot access is a substantial right and not lightly to be denied.' " *Nolan v. Cook County Officers Electoral Board*, 329 Ill. App. 3d 52, 55 (2002) (quoting *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69, 71 (1994)). The Election Code is designed to balance a candidate's right to have his name appear on the ballot with the need to preserve the integrity of the petition process and to encourage qualified voters' participation. *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 460 (2008). Before a candidate's name is removed from a ballot, both the rights of the candidate and the voters must be weighed, and the removal must have "a rational relationship to a legitimate governmental objective." *Huskey v. Municipal Officers Electoral Board*, 156 Ill. App. 3d 201, 205 (1987). "A minor error in a candidate's nominating papers should not result in a candidate's removal from the ballot. [Citation.] Moreover, substantial compliance with the Election Code is acceptable when the invalidating charge concerns a technical violation that does not affect the legislative intent to guarantee a fair and honest election. [Citation.]" *Siegel*, 385 Ill. App. 3d at 461. See also *Brennan v. Kolman*, 335 Ill. App. 3d 716 (2002).

¶ 46    Here, as thoroughly discussed above, Brewer's inclusion of page 176 in his nomination papers constituted a mere technical error requiring only substantial, rather than strict, compliance with the Election Code. The Board did not err in finding that his petition did, in fact, substantially comply with the Code. As the circuit court properly stated, "there has been no allegation that the integrity of the petition process is threatened by the inclusion of a single errant page, nor that voters' participation in the electoral process is legitimately threatened by an inadvertent mistake to include a single petition page of another candidate. [Brewer's] right to ballot access outweighs these other considerations."

¶ 47    While Samuelson argues that allowing Brewer's name to appear on the ballot would disenfranchise the 15 voters whose names appeared on page 176, he has offered no evidence that page 176 was not also included in Patton's nomination papers and, moreover, has utterly failed to offer a compelling argument as to how removing Brewer's name from the ballot would not disenfranchise Brewer's 1,239 petition signers. Thus, in light of the technical nature of Brewer's error, and Illinois's strong public policy in favor of ballot access, we find that no constitutional violation occurred in this case.

¶ 48                                E. Apparent Conformity

¶ 49    Samuelson finally contends, for the first time on this appeal, that Brewer's nomination

papers should not have been deemed valid under the apparent conformity test imposed by section 10-8 of the Election Code, which provides that "nomination papers *** being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid." 10 ILCS 5/10-8 (West 2008). Brewer, however, argues first that because Samuelson never raised this issue in his objector's petition, before the Board or before the circuit court, it is waived. He further argues that even if we were to consider this issue, his petition was in apparent conformity with the Election Code when it was filed. We agree with Brewer.

¶ 50    It is axiomatic that a party cannot raise for the first time on appeal arguments that it did not present below. *Cook County Board of Review v. Property Tax Appeal Board*, 403 Ill. App. 3d 139, 144-45 (2010) (" 'arguments or objections that are not made during the course of the administrative hearing process but instead are raised for the first time on review are deemed waived' " (quoting *Cook County Board of Review v. Property Tax Appeal Board*, 395 Ill. App. 3d 776, 787 (2009))). See also *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 413 (2002) ("Plaintiffs never raised this argument in the trial court and, therefore, it is waived.").

¶ 51    Here, the record indicates that Samuelson never raised the issue of whether Brewer's papers were in "apparent conformity" pursuant to section 10-8 in his objector's petition, in his pleadings before the Board, or in his petition for judicial review to the circuit court. The sole argument relating to page 176 in his objector's petition was predicated upon alleged deviations from the provisions of section 7-10 of the Election Code, which provided that the pages of candidate's nomination papers "shall then be numbered consecutively." 10 ILCS 5/7-10 (West 2008). As stated above, Samuelson contended that because page 176 pertained to a different candidate, and was therefore extraneously included in Brewer's nomination papers, the petition sheets following page 175 were out of numerical sequence and therefore invalid, so as to create a shortage in the number of signatures necessary to satisfy the certification requirements of the Election Code. Given Samuelson's failure to properly raise this issue before the board, we consider this issue waived.

¶ 52    Even if we were to consider this issue on the merits, we would nevertheless find that Brewer's papers were, in fact, in apparent conformity with the Election Code. Samuelson apparently contends that it is the duty of the county clerk to inspect every single page of a candidate's nomination papers and disqualify candidates whose nomination papers are not in proper form, regardless of how inconsequential the deviation.

¶ 53    Samuelson has cited no case in which nomination papers containing an insignificant deviation were nevertheless rejected by an election official under the apparent conformity test, which otherwise would have been found to be in substantial compliance by the Board. Here, as previously indicated, the invalidity of a single petition sheet, inadvertently included among several hundred others, where a candidate otherwise had a sufficient number of signatures and where the nomination papers as a whole were in substantial compliance with the Election Code, cannot compel the invalidation of the entire candidacy.

¶ 54    In order for a candidate's nomination papers to fail this test for apparent conformity, any deviation from the Code must be glaring and substantial to the extent that such deviations

-12-

can be easily discovered by an election official acting as a "gatekeeper to turn away nominating papers that do not even purport to conform to the law." *North v. Hinkle*, 295 Ill. App. 3d 84, 89 (1998). For example, apparent conformity has not been found where there have been material deviations from the essential provisions of the Election Code, such as a candidate's failure to file a certificate of candidacy (*North*, 295 Ill. App. 3d at 88-89 (the question of whether nomination papers contain a required statement of candidacy "is precisely the type of question that can be answered by a facial examination of the papers themselves")) or situations where the candidate had close to 3,000 fewer signatures than statutorily required (*Druck v. Illinois State Board of Elections*, 387 Ill. App. 3d 144, 155 (2008) ("Nomination petitions that on their face lack the number of signatures required for ballot access *** are not in conformity of the Election Code.")).

¶ 55    A lack of apparent conformity cannot be deemed to extend to every single failure to dot an "i" or cross a "t," or, in this case, to the seemingly inadvertent inclusion of a single petition sheet out of over 400, particularly where the signatures on that sheet were not included in the candidate's total. It would be paradoxical if, under the apparent conformity test, an election official would be free to reject nomination papers that would otherwise be deemed to be in substantial compliance with the Election Code by the Board. Thus, deviations that are trivial, but still in substantial compliance with the Election Code, would also be deemed in apparent conformity. To allow an election official to do more would give that official more power than authorized by statute (*People ex rel. Giese v. Dillon*, 266 Ill. 272, 275-76 (1914) (when a petition "appears on its face to be in compliance," an election official "cannot institute an investigation" to determine whether it was, in fact, compliant)), and would usurp power from the Board, which is authorized by law to hear objections to nomination papers.

¶ 56    Here, we are unwilling to say that Brewer's nomination papers, on their face, were not in apparent conformity with the Election Code based solely on the presence of one errant petition sheet. As discussed thoroughly above, the inclusion of this sheet represented a mere technical error insufficient to disqualify Brewer's entire candidacy, as Samuelson suggested, and hardly amounts to the type of error that would render his papers invalid on their face.

¶ 57                               III. CONCLUSION

¶ 58    For the aforementioned reasons, we affirm the decision of the Board.


¶ 59    Affirmed.