# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Cortez v. Municipal Officers Electoral Board*, 2013 IL App (1st) 130442**

| | |
|---|---|
| Appellate Court Caption | RITA H. CORTEZ, PATRICIA TWYMON, ANTHONY SMITH, REGINALD WHITLEY, WILBUR TILMAN, DEJUAN GARDNER, RAMONDE WILLIAMS, TYHANI HILL, and LARRY CABALLERO, Plaintiffs-Appellees, v. THE MUNICIPAL OFFICERS ELECTORAL BOARD FOR THE CITY OF CALUMET CITY, ADOLF AGUILAR, RANDY BARRON, BETTY BOLES, JOSEPH L. CASTELLANOS, GUY EVELAND, ROBERT FREDRICKSEN, STEVON GRANT, DEBORAH HAYNES-SHEGOG, CASSANDRA HOLBERT, BERNICE M. McCLENDON, SALIMAH MUHAMMAD, ANNIE M. SMITH, and CARRIE SPAULDING, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-0442 |
| Filed | February 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from objections to the nominating papers filed by primary election candidates for positions in the government of a city, the municipal electoral board's decision to remove from the ballot eight candidates who omitted the words "who is to me personally known" from the notarization on the "Statement of Candidacy" was reversed, since the notarization substantially complied with the requirements of the Election Code, but a candidate who filed a "Statement of Economic Interests" applicable to statewide offices, rather than the local unit of government at issue, was properly removed from the ballot on the ground that he did not substantially comply with the purpose of the statutory requirements. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2012-COEL-026; the Hon. Edmund Ponce de Leon, Judge, presiding. |

Judgment             Affirmed in part and reversed in part.

Counsel on          James P. Nally, of Chicago, for appellants.
Appeal

                          John J. Jawor, of Jawor Law Firm PC, of Bolingbrook, for appellees.

Panel                    JUSTICE GORDON delivered the judgment of the court, with opinion.
                          Justices Hall and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1       In the case at bar, the defendant, Municipal Officers Electoral Board for the City of Calumet City (the Board), was persuaded by certain objections made to the nominating papers of nine Democratic candidates for various offices in Calumet City; and, thus, the Board ruled that the candidates' names could not be placed on the ballot for the February 26, 2013, consolidated primary election. The circuit court of Cook County reversed the Board's order, and the Board now appeals to us. This appeal concerns the candidacy of the following nine candidates: Rita Cortez, Patricia Twymon, Anthony Smith, Reginald Whitley, Wilbur Tilman, DeJuan Gardner, RaMonde Williams, Tyhani Hill, and Larry Caballero. For the reasons stated below, we reverse the Board's decision with respect to the first eight candidates and, thus, find that their names may remain on the ballot. However, we affirm the Board's decision with respect to Larry Caballero and, thus, find that his name may not remain on the ballot.

¶ 2                                    BACKGROUND

¶ 3                      I. Facts Relating to All Nine Candidates

¶ 4       An objection common to the nominating papers of all nine candidates was that the words in the notarization, "who is to me personally known," were omitted on the candidates' "Statement of Candidacy."

¶ 5       Section 7-10 of the Election Code provides that the notarization on this statement "shall be in substantially the following form:"

       "Subscribed and sworn to (or affirmed) before me by..., who is to me personally known, on (insert date)." 10 ILCS 5/7-10 (West 2010).

¶ 6       In contrast, the notarization on the statements of these nine candidates stated only: "Signed and sworn to (or affirmed) by *** before me, on ***." The Board sustained this objection with respect to all nine candidates.

¶ 7                          II. Facts Relating Only to Caballero

¶ 8      The objections which pertained only to candidate Larry Caballero concerned his "Statement of Economic Interests." Caballero was required to file a "Statement of Economic Interests" that would have provided information on his dealings with Calumet City. Instead, he completed a "Statement of Economic Interests" that was designed to provide information on his dealings with a different government entity, namely, the State of Illinois.

¶ 9      Our state statute requires candidates for office to provide a "Statement of Economic Interest." There is one form for candidates for statewide office which poses questions pertaining to the State of Illinois (5 ILCS 420/4A-103 (West 2010)); and there is a different form for candidates for local office which asks questions pertaining to the local unit of government at issue (5 ILCS 420/4A-104 (West 2010)) which, in the case at bar, was Calumet City. As will be discussed later, there are substantial differences between the two forms.

¶ 10     For whatever reason, whether inadvertence or deliberate intent, Caballero chose to file the form for statewide candidates which asked questions about his connections with the State of Illinois. Thus, he was never faced with the questions about his connections to Calumet City. On the form that he did file, he answered "N/A" or "not applicable" to every question.

¶ 11     As a result, there was an objection made that Caballero failed to file a "Statement of Economic Interests" as required by law. An additional objection was made that he failed to file a receipt for the filing of the "Statement of Economic Interests" with the Cook County clerk by the end of the filing period. The Board sustained these objections and found his nominating paper to be invalid in its entirety.


¶ 12                                   ANALYSIS
¶ 13                              I. Standard of Review

¶ 14     Where an administrative board's decision has been reviewed by the circuit court, the appellate court reviews the decision of the electoral board rather than the decision of the circuit court. *Pascente v. County Officers Electoral Board*, 373 Ill. App. 3d 871, 873 (2007); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). When the dispute is over the interpretation of a statute, as it is in this case, then the question is purely one of law and our standard of review is *de novo*. *Cinkus*, 228 Ill. 2d at 210. See also *Pascente*, 373 Ill. App. 3d at 873 ("The question of interpreting whether a candidate complied substantially with the Election Code is a question of law.").


¶ 15                               II. The Notarization

¶ 16     On this appeal, the appellants argue that the Election Code provides different notarization language for two different documents: (1) the petition document that candidates use to obtain signatures from voters; and (2) the "Statement of Candidacy." 10 ILCS 5/7-10 (West 2010). The notarization for the petition states: "Subscribed to and sworn to before me on (insert date)," while the notarization for the "Statement of Candidacy" contains the following longer form: "Subscribed and sworn to (or affirmed) before me by..., who is to me personally

known, on (insert date)." 10 ILCS 5/7-10 (West 2010). The appellants argue that the difference in language indicates a legislative intent to use the longer form on the "Statement of Candidacy."

¶ 17    There is no dispute that these nine candidates used the short form, rather than the long form. There is also no dispute that the statute provides that the long form should be used on the "Statement of Candidacy." The only dispute is whether the legislature intended the striking of the candidates' names from the ballot to be the appropriate sanction for a mistake in the use of the wrong notarization form.

¶ 18    "The primary objective of statutory interpretation is to give effect to the intent of the legislature." *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 361 (2009). Each word, clause and sentence of the statute must be given reasonable meaning and not rendered superfluous. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003).

¶ 19    First, the statute does not affirmatively state that the sanction for a discrepancy in language is the striking of the entire candidacy. Second, and most importantly, the statue *does* state that the "Statement of Candidacy" has to be only "in substantially the following form." 10 ILCS 5/7-10 (West 2010). See *O'Connor v. Cook County Officers Electoral Board*, 281 Ill. App. 3d 1108, 1113 (1996) ("If the legislature had intended to require that the nominating petition be in the *exact* form as set out in section 7-10, it would not have used the word 'substantially.' " (Emphasis in original.)).

¶ 20    The appellants argue that the doctrine of substantial compliance should not apply where the legislature has specifically provided for different language for one form, as opposed to another form. However, it will almost always be the case that one form says something different than another form; otherwise, it would provide only one form. Also, and more importantly, the statute simply does not state what appellants argue. The statute does not state, as appellants would have us read it, that the bulk of the form must "be in substantially the following form," but when it comes to the notarization part, that must be exact and without any deviation, or the whole candidacy would be improper. *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶¶ 27, 29 (Justice Joseph Gordon rejected this same argument and held that the phrase " 'in substantially the following form' " "applies to all, not some, of that section's requirements").

¶ 21    Appellants cite *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469 (1980) (*per curiam*), for the proposition that the doctrine of substantial compliance does not apply when the legislature sets forth a "different, significant" notarization form. First, as we have stated before, "we do not interpret *Bowe* as rejecting the doctrine of substantial compliance. Rather, in *Bowe*, there was no substantial compliance, *as a matter of fact*. Thus there was no compliance." (Emphases in original and omitted.) *Bergman v. Vachata*, 347 Ill. App. 3d 339, 346 (2004). Second, the notarization form at issue in *Bowe* was not a "different" form, but rather the "standard" form that the plaintiffs here actually used. In *Bowe*, the document at issue was the petition document that candidates use to obtain signatures from voters, and the notarization required for that petition uses the short form: Subscribed to and sworn to before me on (insert date). See *Bowe*, 79 Ill. 2d at 470 (citing Ill. Rev. Stat. 1977, ch. 46, ¶ 7-10). In *Bowe*, "the undisputed evidence" (*Bowe*, 79 Ill. 2d at 470) showed that a person who had

circulated petitions had not personally appeared before the notary public. Thus, the issue in *Bowe* was not about a form, as it is in this case, but rather about an undisputed lack of action. As the appellants candidly admit in their brief to this court, "[t]he important issue here is not *who* witnessed the signature, it is the fact that none of the witness certifications *** includes the language mandated." (Emphasis in original.) As a result, we do not find appellants' citation to *Bowe* persuasive.

¶ 22    We are mindful that the provisions of the Election Code are designed to protect the integrity of the electoral process. *Samuelson*, 2012 IL App (1st) 120581, ¶ 45 ("designed to *** preserve the integrity of the petition process"); *Welch v. Johnson*, 147 Ill. 2d 40, 56 (1992) ("designed to protect the integrity of the electoral process" (citing *Troutman v. Keys*, 156 Ill. App. 3d 247 (1987), and *Havens v. Miller*, 102 Ill. App. 3d 558, 571 (1981))). However, we believe that access to a place on the ballot is a substantial right not lightly to be denied. *Samuelson*, 2012 IL App (1st) 120581, ¶ 45 (" '[B]allot access is a substantial right and not lightly to be denied.' " (Internal quotation marks omitted.) (quoting *Nolan v. Cook County Officers Electoral Board*, 329 Ill. App. 3d 52, 55 (2002))); *Williams v. Butler*, 35 Ill. App. 3d 532, 536 (1976). This court does not condone the actions of the appellees in this case and believes that people who desire to be elected to public office should be able to follow the recommended directions of the elections statute as written and provided. However, in this case, the remedy of the Board is drastic, and "absent a clearer statement by the legislature that it intended that remedy as a sanction" for an apparently inadvertent omission of language on a notarization, we decline to construe the Election Code in the same manner as the appellants. *Welch*, 147 Ill. 2d at 56-57. *Cf. O'Connor*, 281 Ill. App. 3d at 1112-13 (holding that the exact form of the circulator's affidavit, as set forth in section 7-10 of the Election Code, is not mandatory).

¶ 23            III. Caballero's "Statement of Economic Interests" and Other Issues

¶ 24    The Board concluded that the nominating papers of candidate Larry Caballero were invalid in their entirety, because he failed to file both (1) the required "Statement of Economic Interests" and (2) a corresponding receipt reflecting the timely receipt of this statement, as required by law. Of the nine Democratic candidates before us, the filing of the wrong "Statement of Economic Interests" is an issue only with respect to Caballero. Williams and Hill failed to date their statements. Smith inserted the incorrect office of city clerk, instead of city treasurer on his statement of candidacy. The Board also invalidated their candidacies.

¶ 25    For the following reasons, we agree with the Board and, thus, affirm the Board's decision and reverse the circuit court's decision with respect to Caballero. We disagree with the Board's decision as to Williams, Hill, and Smith, and reverse the Board and affirm the trial court's decision.

¶ 26    The Illinois Governmental Ethics Act (the Ethics Act) requires that candidates for public office file a "Statement of Economic Interests." 5 ILCS 420/4A-103, 4A-104 (West 2010). See also 10 ILCS 5/10-5 (West 2010) (a candidate must submit the "Statement of Economic Interests" form "as required" by the Illinois Governmental Ethics Act). The purpose of the

Ethics Act was "to reveal conflicts of interest between the public trust and private gain by requiring disclosure of financial interests related to public employment." *Miceli v. Lavelle*, 114 Ill. App. 3d 311, 313 (1983).

¶ 27    If a candidate does not file this statement, then his or her nominating papers are invalid. 10 ILCS 5/7-12(8) (West 2010). Section 7-12 of the Election Code provides, in relevant part:

> "Nomination papers filed under this Section are not valid if the candidate named therein fails to file a statement of economic interests as required by the Illinois Governmental Ethics Act in relation to his candidacy with the appropriate officer by the end of the period for the filing of nomination papers unless he has filed a statement of economic interests in relation to the same governmental unit with that officer within a year preceding the date on which such nomination papers were filed." 10 ILCS 5/7-12(8) (West 2010).

As the statute quoted above provides, the failure to file the "required" "Statement of Economic Interests" will be excused only if the candidate filed a statement "in relation to the same governmental unit" within the same year. 10 ILCS 5/7-12(8) (West 2010).

¶ 28    In the case at bar, Caballero filled out the form for candidates for statewide office which asks questions pertaining to the State of Illinois (5 ILCS 420/4A-103 (West 2010)), instead of the required form for local candidates which asks questions pertaining to the local unit of government at issue (5 ILCS 420/4A-104 (West 2010)) which, in the case at bar, was Calumet City. As we explain below, the eight questions on the two forms are substantially different.

¶ 29    The first question on the statewide form asks a candidate to "[l]ist the name and instrument of ownership in any entity doing business in the State of Illinois." 5 ILCS 420/4A-103 (West 2010). In contrast, the first question on the local form asks a candidate to "[l]ist the name and instrument of ownership in any entity doing business with a unit of local government in relation to which the person is required to file." 5 ILCS 420/4A-104 (West 2010). By filling out the statewide form, a candidate avoids having: (1) to list any out-of-state businesses that he owns that do business with the local government; or (2) to identify which listed businesses actually do business with the local government.

¶ 30    The fifth question on the local form does not appear anywhere, in any version, on the statewide form. The fifth question on the local form asks the candidate to "[l]ist the name of any entity and the nature of the governmental action requested by any entity which has applied to a unit of local government in relation to which the person must file for any license, franchise or permit for annexation, zoning or rezoning of real estate during the preceding calendar year," if the candidate has an ownership interest in the entity of more than $5,000, or received income from it of more than $1,200 during the prior year. 5 ILCS 420/4A-104 (West 2010).

¶ 31    By not answering the fifth question, the candidate avoids having to disclose any license, permit or zoning requests made to the local government, where the candidate has the requisite ownership income amounts.

¶ 32    The sixth question on the statewide form asks the candidate to "[l]ist the name of any entity doing business in the State of Illinois from which income in excess of $1,200 was

derived during the preceding calendar year." 5 ILCS 420/4A-103 (West 2010). The sixth question on the local form poses the same question but with respect to "any entity doing business with a unit of local government in relation to which the person is required to file." 5 ILCS 420/4A-104 (West 2010). As with the first question, by filing out the statewide form, a candidate avoids having: (1) to list any out-of-state businesses from which he profits that do business with the local government; or (2) to identify which listed businesses actually do business with the local government in excess of the required amount.

¶ 33    Thus, three out of the eight questions on the forms differ substantially between the statewide version and the local version.

¶ 34    We have no way of knowing from a cold record whether Caballero's decision to fill out the wrong form was intentional or inadvertent. Thus, we make no comment here about his actual motives or intent. However, we observe that, if a hypothetical "bad guy" wanted to avoid answering questions about his connections to his municipality, he would have done exactly what Caballero did here. Filling out the wrong form completely insulates a candidate from any charges of perjury. He could answer honestly every question about the State of Illinois and, thus, avoid having to provide any answers–truthful or otherwise–about his dealing with his own municipality. *Miceli*, 114 Ill. App. 3d at 316 (the "policy" behind the "Statement of Economic Interests" is "clear. The legislature intended that certain information be available to the public prior to the election with respect to actual or potential conflicts of interest that a candidate might have.").

¶ 35    In addition, using the wrong form also insulates the candidate from any criticism by the media or his constituents that his answers about his dealings with the municipality were incomplete or less than forthcoming. He could argue, with some force, that he answered fully all the questions posed on the form that he filled out–that is, full answers about the State of Illinois, with nothing about the municipality in which he is running for elected office. *Miceli*, 114 Ill. App. 3d at 316 (the purpose of the "Statement of Economic Interests" is to open "up [the candidates] to public scrutiny and allow[ ] a better informed electorate to choose among the alternative candidates on a more rational basis"); *Lyons MVP Party v. Lyons, Illinois, Municipal Officers Electoral Board*, 407 Ill. App. 3d 1004, 1008 (2011) (the court permitted a candidacy to go forward because "[t]his is not a situation where the voters were unable to determine" key information). If deliberate, this ruse would be both very clever and effective in dodging both perjury charges and criticism from the media.

¶ 36    In *Welch v. Johnson*, 147 Ill. 2d 40, 51-52 (1992), our supreme court found, on the facts before it, that the threat of felony and misdemeanor perjury charges supplied enough of an incentive for a candidate to be truthful on his "Statement of Economic Interests," and, thus, striking the candidacy was not necessary as a sanction. See also *Welch*, 147 Ill. 2d at 57 ("our decision is limited to the circumstances of this case"). In *Welch*, the candidate failed to disclose his employment with a community college on his "Statement of Economic Interests" (*Welch*, 147 Ill. 2d at 47), although the statement asked him to list the name of any unit of government that had employed him during the past year (*Welch*, 147 Ill. 2d at 51). Our supreme court found that the record established that this lone omission was completely inadvertent on the candidate's part (*Welch*, 147 Ill. 2d at 49-50).

¶ 37	In contrast to *Welch*, the threat of felony and misdemeanor perjury charges is no threat at all in the case at bar, because the candidate simply sidestepped the issue of whether or not to be truthful by answering entirely different questions. In essence, the candidate substituted different questions and answered those instead. *Miceli*, 114 Ill. App. 3d at 317 (holding that filing a "Statement of Economic Interests" with respect to the Chicago Board of Education did not satisfy the requirement, for a candidate running for alderman, to file a statement with respect to the City of Chicago).

¶ 38	It is interesting to note that filling out the wrong statement was an issue only with respect to Caballero, and not with respect to any of the other eight Democratic candidates for Calumet City offices. However, as we decide this issue as a purely legal question, where *de novo* review applies, we do not reach the factual issue of his actual intent.

¶ 39	Since permitting a candidate to fill out the wrong statement would open the process up to the possibility of subterfuge and circumvention in a way that we cannot imagine our legislature intended, we find that filling out the wrong form does not constitute substantial compliance. *Miceli*, 114 Ill. App. 3d at 316 (if a decision would mean that "a candidate could always circumvent," then that cannot be what the legislature intended). If we would find otherwise, the precedent we would set would allow all candidates to thwart the intention of the legislature in requiring the filing of an economic interests statement, which is to show that no conflict of interest exists with the governmental body to which the candidate seeks elected office.

¶ 40	The doctrine of substantial compliance will save a candidate's nominating papers only when the defect is minor and the papers still satisfy "the apparent purpose" of the statute's requirements. *Lewis v. Dunne*, 63 Ill. 2d 48, 53 (1976); *Goodman v. Ward*, 241 Ill. 2d 398, 409 (2011) (citing *Lewis* with approval and holding that to be in substantial compliance, a candidate's nominating papers must satisfy the statute's purpose). Here, as we have explained, the apparent purpose was circumvented, and thus the doctrine of substantial compliance cannot save this candidate's papers. *Samuelson*, 2012 IL App (1st) 120581, ¶ 20 (" 'substantial compliance with the Election Code is acceptable when the invalidating charge concerns a technical violation \*\*\*. But substantial compliance is not operative to release a candidate from compliance with the provisions intended by the legislature to guarantee a fair and honest election.' " (quoting *Madden v. Schumann*, 105 Ill. App. 3d 900, 903-04 (1982))).

¶ 41	Finally, our decision is limited to the circumstances of this case without taking into consideration that Caballero's answers to the questions on the state form were answered "N/A" or "not applicable." In addition, our decision is not to be taken as an expression of opinion on the sanctions clearly provided by the legislature for the filing of willfully false or incomplete statements of economic interest.

¶ 42	As a result, with respect to Caballero only, we agree with the Board, and we affirm its decision and reverse the decision of the circuit court. As to Williams, Hill, and Smith, we reverse the Board and affirm the circuit court. Our Illinois Supreme Court has held that a reading of the plain language of these statutes convinces us that "removal from the ballot is not a permissible sanction for the filing of a statement of economic interests which is not true, correct and complete when filed with the appropriate officer merely due to inadvertence

on the part of the person filing the statement." *Welch*, 147 Ill. 2d at 51.

¶ 43                                                     CONCLUSION

¶ 44        For the foregoing reasons, we reverse the Board's decision and affirm the circuit court of Cook County with respect to the first eight candidates; and, thus, we find that their names may remain on the ballot. However, we affirm the Board's decision and reverse the circuit court of Cook County with respect to Larry Caballero's "Statement of Economic Interests"; and, thus, we find that his name may not remain on the ballot, and reverse the Board's decision and affirm the circuit court with respect to Williams and Hill on their statements of economic interest. We also reverse the Board's decision on Smith and find that he substantially complied with the election laws and affirm the circuit court.

¶ 45        Affirmed in part and reversed in part.