GAIL DUNHAM, Petitioner-Appellant, v. NAPERVILLE TOWNSHIP OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellees.

Second District    No. 2—93—0332

Opinion filed August 30, 1994.—Rehearing denied October 3, 1994.

Paul A. Lewis and Lisa M. Nyuli, both of Law Offices of Paul A. Lewis, P.C., of Aurora, for appellant.

Mathias W. Delort, Burton S. Odelson, and Keri-Lyn J. Krafthefer, all of Odelson & Sterk, Ltd., of Evergreen Park, for appellee Naperville Township Officers Electoral Board.

Robert J. Schillerstrom and Susan M. Garvey, both of Schillerstrom & Cresto, Ltd., of Naperville, for appellee John Friedman.

JUSTICE COLWELL delivered the opinion of the court:

Petitioner, Gail Dunham, was a candidate for election to the office of Naperville Township supervisor at the April 20, 1993, consolidated election. One of the respondents, John Friedman (the objector), filed an objection to petitioner's nominating petitions, and a hearing was held before respondent Naperville Township Officers Electoral Board (the Board). Petitioner was found to have an insufficient number of valid signatures for placement on the ballot. This appeal is taken from an order of the circuit court sustaining the Board's decision. Petitioner raises two issues on appeal, although we address only one in this published opinion: whether, under the Election Code (Code) (10 ILCS 5/1—1 *et seq.* (West 1992)), an objector must prove his standing as a registered voter as part of his *prima facie* case. We affirm.

At the hearing, after considering line-by-line objections to some of the signatures on the petitioner's nominating sheets, the Board heard evidence regarding the defective notarization. Marge Panek, petitioner's administrative assistant and a notary public, testified for the objector. Petitioner was the supervisor of Naperville Township when the events in question occurred. Panek stated that on February 5, 1993, she was asked to come into petitioner's office at the Naperville Township Hall and notarize several petition sheets, which had already been signed by the circulators. No one else was present. Panek also testified that she was instructed by petitioner to insert false notarization dates on some of the sheets.

Panek stated that none of the five circulators in question appeared before her and swore to the information contained in the petitions. In the case of a circulator named Laura Mahoney, Panek was additionally asked whether she ever saw Mahoney or had any conversation with her before notarizing her signature on February 5. Panek stated that she had not. On cross-examination, Panek stated that, prior to the petitions being filed on February 8, 1993, Mahoney came to Panek's office, dropped off an envelope addressed to petitioner, and said that she was Laura Mahoney.

Panek further testified that on February 8, 1993, she was again asked to come into petitioner's office and notarize a stack of petitions. This time the petitions were for petitioner and two other candidates, both of whom were present. No one else entered the office. Panek testified that the circulator whose name was on the sheets she notarized for petitioner never appeared before her and swore to the information stated on the petition. The date of notarization was the actual date, February 8, 1993.

At the close of Panek's testimony, the objector rested his case, and petitioner presented a motion to dismiss that was denied in part and taken under advisement in part. The ground for the part of the motion that was denied was that the objector had failed to prove his standing as a registered voter.

Addressing the notary issue as part of her defense, petitioner offered the affidavits of some of the circulators. Two of the affidavits, dated February 18 and 19, 1993, state that the affiants directed Panek to notarize their signatures on each sheet they circulated and that they either signed in her presence or identified their signatures to her. The affidavit of Laura Mahoney, dated February 20, 1993, states that she directed Panek to notarize her signature on each sheet and that she signed in Panek's presence. The final affidavit, dated February 22, 1993, states that the affiant and a circulator named Perry O'Kano circulated sheet number 23 of petitioner's petitions. The affidavit goes on to state:

"After circulation I signed one petition for another candidate, as circulator, and Perry O'Kano signed as circulator for [petitioner]. We directed Marge Panek *** to notarize signatures on each sheet, and signed in her presence.

Perry O'Kano is presently out of town, however the facts as stated are true."

The Board found that the objection was "duly filed" and that "the evidence demonstrating that the circulators of the subject sheets did not appear before the notary public was more credible than the evidence, if any, demonstrating that the circulators did appear before the notary." Four line-by-line objections were sustained by the Board, along with 97 objections that were related to the notary issue. Petitioner was found to have 351 valid signatures, short of the required 373 signatures, and she was removed from the ballot.

Petitioner filed a petition for judicial review. Following a hearing, the trial court found that the issue of standing must be affirmatively raised by the person objecting to standing in a timely fashion or the objection is waived. The court reversed the Board's decisions as to the four line-by-line objections, finding them against the manifest

weight of the evidence. The trial court sustained the Board's decision as to the nominating sheets circulated by five of the six circulators whose sheets were challenged. As to the sheet of Laura Mahoney, the sixth circulator, the court reversed the Board and restored the 15 signatures on Mahoney's sheet to the petition. The court characterized Panek's testimony with regard to Mahoney's sheet as "extremely suspect," while Mahoney's affidavit was found to be "clear and unequivocal." The court determined that "[a]t best, the testimony and the affidavit are evenly balanced." The court concluded that the objector failed to sustain his burden of proof with regard to sheet number 23 and that the Board's finding was against the manifest weight of the evidence.

With 19 signatures reinstated, petitioner had a total of 369 valid signatures out of the required 373 signatures. The trial court affirmed the Board's finding that petitioner did not have a sufficient number of valid signatures and ordered that she not be placed on the ballot. Petitioner filed a timely appeal.

●1 Petitioner contends that an objector must prove his standing as a registered voter as part of his *prima facie* case under the Code. The Code provides in pertinent part:

> "Any legal voter of the political subdivision or district in which the candidate *** is to be voted on *** having objections to any certificate of nomination or nomination papers or petitions filed, shall file an objector's petition ***." 10 ILCS 5/10—8 (West 1992).

Petitioner maintains that the statute requires an objector both to plead and prove his standing as a registered voter in the political subdivision involved as part of his *prima facie* case. She asserts that, because the burden of proof lies with the objector in a hearing on objections to nomination papers, the objector must offer proof in his case in chief of every necessary element of his case, including his status as a legal voter of the particular political subdivision. According to petitioner, it was proper for her not to move to dismiss the objector's petition during the Board's consideration of preliminary matters, since it was only at the close of the objector's case in chief that she could have known that no evidence was to be offered as to the objector's standing.

We note that there is no dispute about whether the burden of proof in a proceeding on objections to nomination papers lies with the objector. We also note that there is no evidence in the record showing that the objector was, in fact, a registered voter. Respondents only assert, as did the trial court, that under Illinois law lack of standing is an affirmative defense that must be raised by the petitioner in a timely fashion. Thus, the question before us is a purely legal one.

We have found no cases addressing the issue of standing under the Code. Petitioner cites *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 209, for the proposition that where a statute creates a right unknown at common law and includes within the statute a limitation or restriction on that right, the restriction is an inherent element of the right so created. In such cases, according to petitioner, the limiting provision is a condition precedent to the exercise of the right created by the statute. Petitioner fails to mention, however, that the *Fredman* court was not addressing the issue of standing, but, rather, the distinction "between statutes of limitation and statutes that both confer jurisdiction on a court *and fix a time within which such jurisdiction may be exercised.*" (Emphasis added.) (*Fredman*, 109 Ill. 2d at 209.) In other words, the *Fredman* court was strictly concerned with a time period fixed by a jurisdictional statute and concluded that such a time period is an inherent element of, or a condition precedent to, the right to seek a remedy under the statute. (*Fredman*, 109 Ill. 2d at 209.) We decline to extend the court's reasoning to the question of standing.

Citing a second district case, the Illinois Supreme Court has unequivocally stated that "[i]n Illinois, lack of standing is an affirmative defense." (*Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 494, citing *In re Custody of McCarthy* (1987), 157 Ill. App. 3d 377, 380; accord *Noyola v. Board of Education* (1992), 227 Ill. App. 3d 429, 433 ("Lack of standing is an affirmative defense, and it is the defendants' burden to show that the plaintiffs do not have standing to sue").) We see no reason to make an exception to this rule in cases, such as the one before us, involving the Election Code.

•2 In the *McCarthy* case, cited above, this court stated that "[l]ack of standing has been deemed an affirmative defense and, therefore, is subject to section 2—619(a)(9) of the Civil Code of Procedure [735 ILCS 5/2—619(a)(9) (West 1992)]. [Citation.] Section 2—619(a) provides that a motion to dismiss must be brought 'within the time for pleading.' [735 ILCS 5/2—619(a) (West 1992).]" (*McCarthy*, 157 Ill. App. 3d at 380.) Noting that a trial court has the discretion to allow the late filing of a motion to dismiss, we proceeded to address the rationale for affirmative defenses:

> "[T]he purpose of affirmative defenses, such as lack of standing, is to afford the defendants the means of obtaining at the outset of litigation summary disposition of issues of law or easily proved issues of fact. [Citation.] In other words, these defenses can obviate the need for parties and courts to become mired in causes that could be quickly dispatched." *McCarthy*, 157 Ill. App. 3d at 381.

We find this reasoning to be applicable to hearings under the

724

Election Code, where the efficient use of public resources is comparably important. The electorate, the electoral boards and commissions, and the candidates themselves are ill served by any delay in moving for proof when there is doubt as to an objector's standing. Therefore, we conclude that the question of an objector's standing under the Code is an affirmative defense that must be raised by the petitioner in a timely fashion.

For the reasons stated, we affirm the circuit court's denial of petitioner's motion for a directed finding.

Affirmed.

BOWMAN and DOYLE, JJ., concur.