# Illinois Official Reports

## Appellate Court

---

**Sims v. Municipal Officers Electoral Board for the Village of Riverdale,**
**2021 IL App (1st) 210168**

---

| | |
|---|---|
| Appellate Court Caption | JANICE I. SIMS, Petitioner-Appellant, v. THE MUNICIPAL OFFICERS ELECTORAL BOARD FOR THE VILLAGE OF RIVERDALE, LAWRENCE L. JACKSON, KAREN HOLCOMB, ROBERT BERTUCCI, ALBERT JONES, and LARRY DEAN, Respondents-Appellees. |
| District & No. | First District, Third Division<br>No. 1-21-0168 |
| Filed | March 12, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2021-COEL-12; the Hon. Nichole C. Patton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | McStephen O.A. Solomon, of Hazel Crest, for appellant.<br><br>Luke P. Hajzl, of Rolling Meadows, for appellee Municipal Officers Electoral Board for the Village of Riverdale.<br><br>Tiffany Nelson-Jaworski, of Del Galdo Law Group, LLC, of Berwyn, for other appellees. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1        Petitioner, Janice I. Sims, sought to be a candidate for the office of village trustee in an upcoming election. Two individuals jointly filed objections to petitioner's nomination papers. The electoral board was convened, held a hearing, and found petitioner's nomination papers to be invalid. The electoral board ordered that petitioner's name be stricken from the ballot. Petitioner filed a petition for judicial review of the electoral board's decision in the circuit court. The circuit court affirmed the electoral board's decision. Petitioner now appeals to this court asking that we reverse the electoral board's decision and order her name to be restored to the ballot. Finding no reversible error in the electoral board's decision, we affirm.

¶ 2                                BACKGROUND
¶ 3        Petitioner, Sims, intended to seek election as a trustee for the Village of Riverdale in the general election that is set to be held on April 6, 2021. She timely filed her nomination papers on December 21, 2020, which consisted of a statement of economic interests, a statement of candidacy, an optional loyalty oath, and signature petition sheets. Two of the respondents in this case, Albert Jones and Larry Dean, filed a petition objecting to the sufficiency of Sims's nomination papers.

¶ 4        Respondent, the Municipal Officers Electoral Board for the Village of Riverdale (Electoral Board), convened for the purpose of hearing the objections and ruling on them. Before the hearing, Sims filed a motion to strike and dismiss the objectors' petition. In her motion to dismiss, Sims principally argued that the Electoral Board lacked subject-matter jurisdiction because no date and time of filing was included on the petition that was filed or served on her. The matter was fully briefed before the Electoral Board.

¶ 5        Three main issues were raised by the parties that required determinations from the Electoral Board at the hearing. First, Sims argued that the objections to her nomination papers were untimely. If the objections were found to be untimely, the Electoral Board would not have had subject-matter jurisdiction to pass upon the merits of the objections and the matter would have ended there. If, however, the objections were timely filed, then the Electoral Board had to reach the merits of the objectors' specific objections. The second issue before the Electoral Board required it to determine whether Sims collected a sufficient number of valid signatures to be included on the ballot. The third issue before the Electoral Board required it to determine whether Sims's nomination papers should be invalidated because certain persons who circulated petitions for Sims's candidacy had also circulated petitions for another candidate of a different political party that was seeking election in another race.

¶ 6        On January 27, 2021, the Electoral Board issued its decision. On the first issue, the Electoral Board concluded that the objectors' petition was timely filed and that the Electoral Board, therefore, had subject-matter jurisdiction to rule on the objectors' petition. On the second issue, the Electoral Board concluded that Sims had only 43 valid signatures where 47 valid signatures were required to appear on the ballot. On the third issue, the Electoral Board

concluded that Sims's use of circulators that had circulated petitions for another candidate violated section 10-4 of the Election Code (or Code) (10 ILCS 5/10-4 (West 2018)) and, therefore, Sims had no valid signatures. Based on those conclusions, the Electoral Board determined that Sims's nomination papers were invalid, and it ordered her name to be stricken from the ballot.

¶ 7 Sims filed a petition for judicial review in the circuit court. In her petition for judicial review, Sims raised two specific arguments. Sims argued (1) that the objectors' petition was "untimely and unduly filed" and (2) that "[t]he Circulators who circulated [her] petition sheets did so in compliance with the Election Code." Sims urged the circuit court to reverse the decision of the Electoral Board and to order that her name be printed on the ballot for the election. The circuit court affirmed the decision of the Electoral Board. Sims now appeals and asks us to reverse both the circuit court's order and the Electoral Board's order. She asks that we order that her name be restored to the ballot for the election for the office of trustee for the Village of Riverdale in the April 6, 2021, election.

¶ 8                                                    ANALYSIS

¶ 9 In an appeal from a judicial review action challenging an election board's decision, we review the decision of the election board, not the decision of the circuit court. *Cortez v. Municipal Officers Electoral Board*, 2013 IL App (1st) 130442, ¶ 14. The applicable standard of review in reviewing an election board's decision depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). An election board's findings and conclusions on questions of fact are deemed *prima facie* true and correct and a reviewing court is limited to ascertaining whether such findings of fact are against the manifest weight of the evidence. *Id.* In contrast, an election board's decision on a question of law is not binding on a reviewing court, and we review the board's conclusions as to matters of law *de novo*. *Brennan v. Kolman*, 335 Ill. App. 3d 716, 719 (2002). We review an election board's conclusions on mixed questions of law and fact under the clearly erroneous standard. *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 19.

¶ 10 The first issue to be resolved on appeal is whether the objectors' petition was filed in the time permitted by the Election Code. The Election Code provides that objections to certificates of nomination or nomination papers must be "duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers." 10 ILCS 5/10-8 (West 2018). In order for an election board to have subject-matter jurisdiction over a challenge to nominating papers, the objection must be made in the time period set forth in the Election Code. *Thomas v. Powell*, 289 Ill. App. 3d 143, 146-47 (1997).

¶ 11 Sims filed her petition for nomination on December 21, 2020, which was also the last permissible day for filing nomination papers. Thus, for the objections in this case to have been timely filed, the objectors' petition was required have been filed within five business days after December 21, 2020. Whether an election board and the circuit court have subject-matter jurisdiction over an election dispute is a question of law that we review *de novo*. *Bey v. Brown*, 2015 IL App (1st) 150263, ¶ 43.

¶ 12 In this appeal, Sims's challenge to the Electoral Board's subject-matter jurisdiction has two parts. First, Sims argues, as she did before the Electoral Board and the circuit court, that the petition that was filed lacks any time stamp or other identifiable receipt to demonstrate when

- 3 -

the petition was actually filed. Sims argues that the lack of a time stamp violates the Election Code and renders the objections untimely. In conjunction with that argument, the parties dispute which of them had the burden to prove the timeliness or untimeliness of the filing at the hearing before the Electoral Board. Second, in response to evidence produced for the first time during judicial review that appears to show that the objectors' petition was filed on December 30, 2020, Sims argues that such evidence proves the untimeliness of the objections. Sims contends that any objections to her nomination papers were required to be filed by December 29, 2020.

¶ 13     In the proceedings before the Electoral Board, Sims argued that the lack of a time stamp on the objectors' petition must lead to the conclusion that the objections were not timely filed and, therefore, that the Electoral Board lacked subject-matter jurisdiction over the objection petition. Sims points to the section of the Election Code governing objections to nomination papers, which provides that "[i]n the case of nomination papers or certificates of nomination, the State Board of Elections, election authority or local election official shall note the day and hour upon which such objector's petition is filed." 10 ILCS 5/10-8 (West 2018).

¶ 14     Contrary to Sims's implication, nothing in the Election Code requires that a time stamp be placed upon an objector's petition for the petition to have been, in fact, timely filed in accordance with the Code. The Election Code requires the election official to "note" the day and hour that the petition is filed, but the Code does not require that the notation be made on the face of the objection petition. See *id.* Sims provides no authority for the proposition that a time stamp be placed on the petition in order for the petition to be found to be in compliance with the time requirement of the Code, and we see no basis for implying such a requirement. We reject Sims's argument that the Electoral Board should have found the petition to be untimely solely because the petition lacked a time stamp to demonstrate when it was filed.

¶ 15     The issue then turns upon whether it was the objectors' burden to prove that the petition was timely filed or whether it was Sims's burden to prove that the petition was untimely. At the hearing that included both Sims's motion to dismiss the objection petition and the merits of the objection petition, neither party provided any evidence regarding when the objections were actually filed or when they were due. As a general matter, the burden of proof in a proceeding to contest nominating petitions lies with the objector. *Hagen v. Stone*, 277 Ill. App. 3d 388, 390 (1995). However, if a would-be candidate wants to assert an affirmative defense in response to an objection to her nomination papers, she bears the burden of pleading and proving the facts underlying the affirmative defense. *Id.*; *Morton v. State Officers Electoral Board*, 311 Ill. App. 3d 982, 985 (2000). We have also observed that when an objector's petition is filed and accepted by the election authority, there is a reasonable inference that there was statutory compliance in the filing of the objections. *Zurek v. Petersen*, 2015 IL App (1st) 150508, ¶¶ 7-11.

¶ 16     The matter of timely filings for objections to nomination papers cannot be strictly considered an affirmative defense because it is jurisdictional, and the issue of subject-matter jurisdiction cannot be waived like many other affirmative defenses. However, because Sims raised the issue of timeliness in an effort to dismiss the objectors' petition, it seems most logical to place the burden on her to produce some form of proof that the objections were, in fact, untimely in order to at least shift the burden of proof to the objectors to prove timeliness. The issue of the timeliness of an objection is somewhat similar in character to the issue of an objector's standing, which we have held does not need to be proved by an objector as part of

his *prima facie* case. *Dunham v. Naperville Township Officers Electoral Board*, 265 Ill. App. 3d 719, 722-24 (1994). That view also seems to align with the inference of statutory compliance afforded to an objector once the petition is accepted by the election authority. *Zurek*, 2015 IL App (1st) 150508, ¶¶ 7-11. Nevertheless, in this case, we need not expressly resolve the issue of which party should bear the burden with regard to the timeliness of the objections because, when given the opportunity, Sims flatly refused to question the relevant election official about the timeliness of the objectors' filing. Instead, Sims chose to stand on her pleading in which she argued that the lack of a time stamp alone was enough to establish the untimeliness of the petition.

¶ 17    At the portion of the hearing directed toward Sims's motion to dismiss the objections on the basis of untimeliness, the attorney for the Electoral Board offered that the local election official was present at the hearing and prepared to testify about the timeliness of the filing. In response, Sims's attorney stated that Sims was going to rest on "what has been pled so the Board can rule on that." Sims's attorney continued, "I'm going to rest on that as argued in my petition." The attorney for the Electoral Board responded that "in the interest of a complete record in the event this gets appealed, we have the person here. Is there any objection to having her testify to build a record so that if this gets reviewed, that they'll have the testimony in addition to the legal arguments? Because right now essentially you have your pleading ***, but there's no testimony in support of either one." Sims's attorney responded that "I'm going to have to object to anything coming into the record at this point. If my motion was filed weeks ago, counsel responded to and said there's a receipt out there somewhere, she could have subpoenaed the—I don't know. I don't want to tell her how to do her job but ***." Based on Sims's refusal to allow the Electoral Board to take evidence on the issue of timeliness, only the parties' pleadings and counsels' arguments were made part of the record on this issue.

¶ 18    Instead of taking the opportunity to produce actual evidence concerning the timeliness of the objection, Sims chose to rest on what she had pled in her motion to dismiss the objection. Sims cannot try to seize upon the lack of evidence about the timeliness of the filing when her own conduct was the cause of the lack of evidence. See *Pate v. Wiseman*, 2019 IL App (1st) 190449, ¶ 17 ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." (Internal quotation marks omitted.)). Sims had the opportunity to present evidence to support the argument made in her motion to dismiss, and she refused to offer the evidence, leaving the motion wholly unsupported. Sims's motion to dismiss the objection, which she chose to stand pat upon at the hearing, was based only on her contention that the lack of a file stamp on the petition rendered the objections invalid and left the Electoral Board without jurisdiction. Again, we find that argument unsupported by the Election Code and we reject the proposition that, in the absence of a time stamp being placed on the face of an objector's petition, the objectors' petition must automatically be deemed untimely and invalid.

¶ 19    In Sims's submission on appeal, she acknowledges that the "Electoral Board is a statutory entity with the power to determine the validity of nomination papers pursuant to the objection procedures set forth in Article 10 of the Election Code." The Election Code and our prior decisions interpreting the Code illustrate that an electoral board is empowered to consider the objections made to a candidate's nomination papers and the validity of those objections. *Daniel v. Daly*, 2015 IL App (1st) 150544, ¶ 32. Where, as here, the election official in charge of receiving that document accepted it and served the notices required by statute, and where the

electoral board was then duly constituted, we have found there to be an inference that the objector complied with the statutory filing requirements. See *Zurek*, 2015 IL App (1st) 150508, ¶ 9. Sims produced no evidence to the contrary. The Electoral Board found the objections to have been timely and otherwise validly filed, and based on the limited information presented to us here, we find no basis to rule otherwise. See *id.* ¶ 8.

¶ 20 The second part of Sims's challenge to the timeliness of the objection stems from a document produced for the first time in the circuit court that purports to show that the objectors' petition was filed on December 30, 2020. The document appears to be a filing receipt for Albert Jones and Larry Dean's objectors' petition, and it is stamped "received" by the office of the village clerk with a date of December 30, 2020, and a time of 12:48 p.m.

¶ 21 Sims contends that the receipt dated December 30, 2020, establishes that the objection petition was not timely filed. Sims filed her petition for nomination on December 21, 2020, which was also the last permissible day for filing nomination papers. The Election Code provides that objections must be filed "within 5 business days after the last day for filing the certificate of nomination or nomination papers." 10 ILCS 5/10-8 (West 2018). Thus, for the objections in this case to have been timely filed, the objectors' petition was required to have been filed within five business days after December 21, 2020. Sims contends that the last day for filing objections was December 29, 2020, and the objectors contend that the last day for filing objections was December 30, 2020.

¶ 22 As could be expected from the late-December timeline set forth above, the question of what days are "business days" around the Christmas holiday is contested by the parties. For purposes of the Election Code, "business day" means "any day in which the office of an election authority, local election official or the State Board of Elections is open to the public for a minimum of 7 hours." *Id.* § 1-3(22). The objectors argue that the Village was not open on Christmas Eve, so it does not qualify as a business day for purposes of the Election Code. Sims argues that Christmas Eve is not listed as a State holiday, so it should count as a business day.

¶ 23 There is nothing in the record, nor was there anything introduced before the Electoral Board, as to whether the election office was open for seven hours on Christmas Eve such that it constituted a business day for purposes of the Election Code. The supposed documentary receipt on which Sims bases her argument was similarly not introduced before the Electoral Board. We cannot resolve the parties' contentions on this matter. "[A] court's inquiry into discrepancies in nomination papers is limited to a 'review' of the board's record." *Geer v. Kadera*, 173 Ill. 2d 398, 408 (1996) (citing *Wiseman v. Elward*, 5 Ill. App. 3d 249 (1972)). Our mandate is to review the election board's decision only (*Cinkus*, 228 Ill. 2d at 212), and these arguments were not made to the Electoral Board, were not supported by any evidence at the hearing, and were not decided by the Electoral Board. Because neither the purported filing receipt nor the hours of operation of the election office were made part of the record before the Electoral Board, we cannot consider Sims's argument on this issue.

¶ 24 The Electoral Board noted that Sims failed to plead or offer any evidence regarding the timeliness of the objections. The Electoral Board further noted that it "must infer compliance with petitions where they have been accepted by the officer charged with that function," citing *Zurek*, 2015 IL App (1st) 150508. As a result, the Electoral Board concluded that the petition was timely filed. We find nothing in Sims's arguments or in the record that demonstrates that the Electoral Board lacked jurisdiction to rule on the merits of the objectors' petition.

¶ 25 Moving to the merits of the challenges that the objectors raised in their petition, the objectors raised "signature-based objections" and "circulator-based objections." The conclusions the Electoral Board made regarding the merits of the objectors' objections resulted from the Electoral Board's consideration of evidence and its fact-finding duties. We review an election board's conclusions on questions of fact under the manifest weight of the evidence standard. *Cinkus*, 228 Ill. 2d at 210.

¶ 26 On appeal, Sims only challenges the Electoral Board's conclusion on the circulator-based objections: that her nomination papers are invalid on the basis that certain circulators that circulated petitions on her behalf also circulated petitions on behalf of another candidate. Sims does not raise any issue concerning the Electoral Board's conclusion on the signature-based objections: that she only had 43 total valid signatures where 47 valid signatures were required.

¶ 27 Despite the Electoral Board's finding that Sims did not have enough valid signatures, Sims did not raise this issue in her petition for judicial review in the circuit court. Sims similarly did not raise the issue in her opening submission to this court. During the evidentiary hearing before the Electoral Board, Sims did not present any evidence in response to the objectors' "signature-based objections." In her reply brief on appeal, addressing the signature-based objections on review for the first time, Sims argues that the objectors' contentions on this issue must fail because the Electoral Board lacked subject-matter jurisdiction.

¶ 28 Sims forfeited any issue concerning the signature-based objections for review, and the Electoral Board's decision that Sims lacked the sufficient number of valid signatures must stand. It is axiomatic that a party cannot raise arguments that it did not present below for the first time on appeal. *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶ 50. Where a party fails to argue an issue concerning nomination papers in a petition for judicial review of the sufficiency of the nomination papers, the issue is forfeited in an appeal to this court. *Id.* ¶ 51; see also *Peterson Plaza Preservation, L.P. v. City of Chicago Department of Finance*, 2019 IL App (1st) 181502, ¶ 40. Sims never appropriately sought review of the Electoral Board's finding that she only obtained 43 out of the required 47 signatures. The Electoral Board's unchallenged ruling that Sims lacked the sufficient number of valid signatures defeats any argument Sims now raises challenging the Electoral Board's ruling on the merits of the objections.

¶ 29 The Electoral Board also concluded that Sims's nomination papers were invalid because certain circulators that circulated petitions on her behalf also circulated petitions for another candidate. The other candidate at issue was running for election as a member of the Democratic Party, and Sims was seeking to run as an independent. The Election Code provides that

> "no person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election, or for such candidates and parties with respect to the same political subdivision at the next consolidated election." 10 ILCS 5/10-4 (West 2018).

¶ 30 Sims acknowledges that "[f]ive of the Circulators who circulated petition sheets on behalf of [Sims] for the April 6, 2021 consolidated general election had also previously circulated petition sheets on behalf of another Candidate of the Democratic Party for the consolidated primary election to be held on February 23, 2021." Sims also acknowledges that we have previously considered this issue in a case that was "similar to the fact pattern in this case" and ruled that the nomination papers were invalid. See *Wilson v. Municipal Officers Electoral*

*Board*, 2013 IL App (1st) 130957, ¶ 18. Sims, however, points out that the Fourth District of this court reached the opposite conclusion in an opinion issued a few weeks before *Wilson* in *Sandefur v. Cunningham Township Officers Electoral Board*, 2013 IL App (4th) 130127. Sims urges us to consider *Sandefur* and reverse the Electoral Board's decision.

¶ 31     We need not resolve any conflict between *Wilson* and *Sandefur* because Sims does not challenge the Electoral Board's finding that she otherwise lacked sufficient signatures to meet her nomination obligations. Thus, irrespective of the circulators working for multiple candidates of differing political affiliations, the Electoral Board's unchallenged ruling that Sims failed to secure the necessary number of valid signatures is itself a sufficient basis for finding her nomination papers invalid and ordering that her name be removed from the ballot. Sims has failed to show that the Electoral Board committed any reversible error, and the Electoral Board's decision stands.

¶ 32                                   CONCLUSION

¶ 33     Accordingly, we affirm.

¶ 34     Affirmed.