# Illinois Official Reports

## Appellate Court

---

*Let Forest Park Vote on Video Gaming v. Village of Forest Park Municipal Officers Electoral Board*, **2018 IL App (1st) 180391**

---

Appellate Court Caption

LET FOREST PARK VOTE ON VIDEO GAMING, Petitioner-Appellant, v. THE VILLAGE OF FOREST PARK MUNICIPAL OFFICERS ELECTORAL BOARD and Its Members, ANTHONY T. CALDERONE, VANESSA MORITZ, and THOMAS MANNIX; DAVID ORR, in His Official Capacity as Cook County Clerk; and JAMES WATTS, Objector, Respondents-Appellees.

District & No.

First District, Sixth Division
Docket No. 1-18-0391

Filed
Rehearing denied

March 16, 2018
April 13, 2018

Decision Under Review

Appeal from the Circuit Court of Cook County, No. 18-COEL-10; the Hon. James R. Carroll, Judge, presiding.

Judgment

Circuit court judgment reversed.
Board decision reversed and remanded with directions.

Counsel on Appeal

Edward B. Mullen III, of Mullen Law Firm, of Chicago, for appellant.

James P. Nally, of Law Office of James P. Nally, P.C., of Chicago, for appellees.

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justice Cunningham concurred in the judgment and opinion.
Justice Delort specially concurred, with opinion.


**OPINION**

¶ 1     The petitioner, Let Forest Park Vote on Video Gaming, appeals from an order of the circuit court which affirmed a decision of the Village of Forest Park Municipal Officers Electoral Board (Board) sustaining the objection of James Watts to a referendum petition seeking to place a public question regarding video gaming on the ballot to be voted on by the voters of the Village of Forest Park (Village). For the reasons which follow, we reverse the judgment of the circuit court, reverse the decision of the Board, and remand the matter back to the Board with directions.

¶ 2     On December 18, 2017, the petitioner filed a petition with the clerk of the Village, seeking the placement of a proposition on whether video gaming shall be prohibited in the Village on the ballot to be voted on by the voters of the Village (Referendum Petition). The Referendum Petition consisted of 276 petition sheets in total, containing 3522 signatures. The headings on each of the individual petition sheets were identical with one exception: the headings on six of the petition sheets stated that the proposition would be submitted to the voters "at the General Election to be held on November 8, 2016." The headings on the remaining 270 petition sheets, however, stated that the proposition would be submitted to the voters "at the next regular election occurring not less than 92 days after the filing of this petition."

¶ 3     On December 26, 2017, James Watts filed a petition with the clerk of the Village, raising multiple objections to the Referendum Petition. He asserted grounds addressed to the validity of the signatures contained in the Referendum Petition and also alleged that the headings contained on the individual sheets of the petition failed to comply with the uniformity requirement of section 28-3 of the Election Code (10 ILCS 5/28-3 (West 2016)). Watts sought a determination by the Board that the Referendum Petition is legally insufficient and a decision declaring that the referendum question not be printed on the official ballot of the next regular election in the Village.

¶ 4     A records examination was conducted on January 17, 2018, by the Cook County Clerk. Objections to 682 signatures contained in the Referendum Petition were sustained, leaving a total of 2840 valid signatures.

¶ 5     On three days in January 2018, the Board met and conducted hearings on Watts's objections to the Referendum Petition. The Board issued its written decision on January 26, 2018, finding that the individual sheets contained in the Referendum Petition failed to comply with the heading uniformity requirement of section 28-3 of the Election Code (*id.*) and, as a consequence, holding all 276 petition signature sheets to be invalid. It found, therefore, that the Referendum Petition contains less than the minimum number of valid signatures of the legal voters of the Village. The Board ordered that the public question

addressed to video gaming in the Village shall not appear on the ballot of the next regular election.

¶ 6    The petitioner sought a judicial review of the Board's decision. On February 21, 2018, the circuit court affirmed the Board's decision, and this appeal followed.

¶ 7    When, as in this case, an appeal is taken from a judgment of the circuit court affirming the decision of an electoral board, it is the Board's decision which we review, rather than the circuit court's decision. *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶ 11. The facts of this case are not in dispute; it is the legal effect of those facts which is at issue. Consequently, we are presented with a mixed question of law and fact to which we apply a " 'clearly erroneous' " standard of review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). An administrative agency's decision is clearly erroneous when we are left with the definite and firm conviction that a mistake has been committed. *Id.*

¶ 8    In urging reversal, the petitioner argues before this court, as it did in the circuit court, that, as 270 of the petition sheets filed with the Village clerk contain identical headings and in excess of the minimum number of signatures required to place the question of video gaming on the ballot, the Referendum Petition is in substantial compliance with the requirements of section 28-3 of the Election Code and the proposition stated therein should be placed on the ballot at the next regular election in the Village. Watts contends that the Referendum Petition does not comply with the mandatory requirements of section 28-3 as each of the petition sheets does not contain the same heading. He argues, therefore, that the Board correctly found all 276 petition sheets invalid and ordered that the proposition on video gaming shall not appear on the ballot at the next regular election.

¶ 9    The initiation and submission of all public questions to be voted on by the electors of any political subdivision are subject to the provisions of article 28 of the Election Code. 10 ILCS 5/28-1 (West 2016). Section 28-1 of the Election Code provides, in part, that:

> "Whenever a statute provides for the initiation of a public question by a petition of electors, the provisions of such statute shall govern with respect to the number of signatures required, the qualifications of persons entitled to sign the petition, the contents of the petition, the officer with whom the petition must be filed, and the form of the question to be submitted." *Id.*

¶ 10    Section 70 of the Video Gaming Act (230 ILCS 40/70 (West 2016)) states that:

> "Upon the filing in the office of the clerk, at least 90 days before an election in any municipality *** of a petition directed to such clerk, containing the signatures of not less than 25% of the legal voters of that municipality ***, the clerk shall certify such proposition to the proper election officials, who shall submit the proposition at such election to the voters of such municipality ***. The proposition shall be in the following form:

| Shall video gaming be prohibited in ……………..? | YES | |
|---|---|---|
| | NO | |

"

¶ 11    Section 28-3 of the Election Code (10 ILCS 5/28-3 (West 2016)) provides, in part, that:

> "Petitions for the submission of public questions shall consist of sheets of uniform size and each sheet shall contain, above the space for signature, an appropriate

heading, giving the information as to the question of public policy to be submitted, and specifying the state at large or the political subdivision or district or precinct or combination of precincts or other territory in which it is to be submitted and, where by law the public question must be submitted at a particular election, the election at which it is to be submitted."

¶ 12   When, as in this case, two statutes relate to the same subject matter, we presume that the legislature intended both statutes to be operative and harmonious, and we must construe them with reference to each other so as to give effect to all of the provisions of each statute. *Cinkus*, 228 Ill. 2d at 218. It follows then that we must consider the provisions of the Election Code and the Video Gaming Act as they relate to the form and content of petitions for the initiation of a public question or referendum on whether video gaming should be prohibited within a municipality *in pari materia* for purposes of statutory construction. *Id.* at 218-19.

¶ 13   In interpreting a statute, our primary goal is to ascertain and give effect to the intent of the legislature. *Id.* at 216. "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning." *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). Where the plain language of the statute is clear and unambiguous, the intent of the legislature that is discernible from the language of the statute prevails, and no resort to other tools of statutory construction is necessary. *Id.*

¶ 14   We find the provisions of section 28-3 of the Election Code relating to the requirements for all petitions seeking the submission of public questions and the requirements of section 70 of the Video Gaming Act relating to petitions seeking a referendum on video gaming within a municipality to be clear and unambiguous. There is no conflict between the requirements of the two statutes, and the provisions of each are capable of being given effect without violating the plain language of the other.

¶ 15   Section 70 of the Video Gaming Act sets forth the place where a petition seeking a referendum on video gaming within a municipality must be filed, the minimum time which must elapse between the filing of such a petition and the date of an election at which the proposition is to be voted on, the number of signatures supporting the petition which must be contained in the petition, and the language of the proposition to be submitted to the voters. See 230 ILCS 40/70 (West 2016). Section 28-3 of the Election Code mandates uniformity in the size of each sheet of such a petition and the content of the heading which must appear above the space for signatures. Section 28-3 also requires that "[t]he heading of each sheet shall be the same." 10 ILCS 5/28-3 (West 2016).

¶ 16   In this case, it cannot be disputed that the headings contained on each of the individual sheets of the Referendum Petition are not the same. The headings contained in 270 sheets of the petition provide that the proposition relating to video gaming in the Village is to be submitted to the voters "at the next regular election occurring not less than 92 days after the filing of this petition." The headings contained in six sheets of the petition provide that the proposition is to be submitted to the voters "at the General Election to be held on November 8, 2016."

¶ 17   The Board found, and we agree, that the provision of section 28-3 of the Election Code requiring uniformity in the headings contained on the individual sheets on a petition for the submission of a public question such as the Referendum Petition is mandatory. The statute provides that the headings "shall be the same." *Id.* The legislature's use of the word "shall" is indicative of its intent to make the provision mandatory. *Brennan v. Kolman*, 335 Ill. App. 3d

716, 719 (2002); *El-Aboudi v. Thompson*, 293 Ill. App. 3d 191, 193 (1997). Also supporting our conclusion that the heading uniformity requirement of section 28-3 is mandatory is the provision in that same section that "[n]o signature shall be valid or be counted in considering the validity or sufficiency of such petition unless the requirements of this Section are complied with." 10 ILCS 5/28-3 (West 2016); *Brennan*, 335 Ill. App. 3d at 720; *El-Aboudi*, 293 Ill. App. 3d at 192-93.

¶ 18 The Board found that, as a result of the Referendum Petition's failure to comply with the mandatory provision of section 28-3 of the Election Code requiring uniformity in the headings of the individual sheets contained therein, all 276 sheets of the Referendum Petition are invalid. We do not believe, however, that the mere fact that a petition seeking the submission of a public question fails to comply with a mandatory provision of section 28-3 necessarily results in the invalidation of the entire petition.

¶ 19 Substantial compliance can satisfy even mandatory provisions of the Election Code. *Samuelson*, 2012 IL App (1st) 120581, ¶ 29; *King v. Justice Party*, 284 Ill. App. 3d 886, 890 (1996). But see *In re Petition to Form a New Park District*, 182 Ill. App. 3d 973, 982 (1989). The question in this case is whether the Referendum Petition, with its lack of uniformity in the headings of the individual sheets, nevertheless substantially complied with the requirements of both the Election Code and the Video Gaming Act.

¶ 20 Strict compliance with the requirements of the Election Code is required when the requirements of the statute "contribute substantially to the integrity of the election process." *Craig v. Peterson*, 39 Ill. 2d 191, 196 (1968); *Samuelson*, 2012 IL App (1st) 120581, ¶ 20. However, substantial compliance is sufficient when there is only a technical violation. *Samuelson*, 2012 IL App (1st) 120581, ¶ 20. The total failure to comply with a statutory requirement will result in the invalidation of a petition. See *Hagen v. Stone*, 277 Ill. App. 3d 388, 391 (1995); *Jones v. Dodendorf*, 190 Ill. App. 3d 557, 562-63 (1989). However, when a deviation from the Election Code is minor or technical in nature and does not affect the legislative intent to guarantee a fair and honest election, the deviation will not render the entire petition invalid. *Samuelson*, 2012 IL App (1st) 120581, ¶¶ 52-56; *King*, 284 Ill. App. 3d at 890-91.

¶ 21 We find that the 270 sheets of the Referendum Petition which share common headings comply with the requirements of section 70 of the Video Gaming Act and substantially comply with the requirements of section 28-3 of the Election Code. Other than his assertion that the headings in these 270 sheets are not the same as the headings in the 6 other sheets in violation of section 28-3, Watts has not argued, nor did the Board find, that the headings contained in the 270 sheets fail, in any other respect, to comply with the requirements of either the Election Code or the Video Gaming Act. Section 70 of the Video Gaming Act requires that a referendum petition on video gaming contain the signatures of not less than 25% of the legal voters in the Village, which the record reflects is 2360 signatures in this case. 230 ILCS 40/70 (West 2016). The records examination determined that there are 2840 valid signatures contained on the 276 sheets which make up the Referendum Petition. Discounting the 90 signatures contained on the 6 sheets of the petition which, in their headings, state that the proposition on video gaming is to be submitted to the voters on November 8, 2016, there remains a minimum of 2750 valid signatures on the 270 sheets remaining which share common headings: 390 signatures more than the statutory minimum. Watts asserts that the Board made no decision on whether the records examination showed

that the Referendum Petition contained sufficient signatures to place the proposition on the ballot. This assertion is patently false. The summary report of the records examination conducted on the Referendum Petition states on its face that the petition contained a total of 2840 valid signatures, "480 signatures greater than the required minimum." Paragraph 7 of the Board's decision states that the records examination was conducted with respect to, among other allegations, the allegation in paragraph 12 of Watts's objection petition stating that the Referendum Petition contains less than the statutorily required number of signatures. Paragraph 8 of the Board's decision states: "The Electoral Board adopts the results of the records exam and admits the results of the records exam as Board Exhibit #6."

¶ 22    The 270 sheets of the Referendum Petition with the same headings contain more than the statutory minimum number of signatures necessary to place before the voters of the Village the question of whether video gaming should be prohibited, and the proposition set forth within the headings of those 270 sheets satisfies the requirement of section 70 of the Video Gaming Act. We hold, therefore, that the inclusion within the Referendum Petition of 6 sheets which do not contain the same headings as the remaining 270 sheets was merely a technical deficiency, which is insufficient to render all 276 sheets of the Referendum Petition invalid.

¶ 23    Based upon the foregoing analysis, we conclude that the Board's decision holding that all 276 sheets of the Referendum Petition are invalid and ordering that the public question addressed to video gaming in the Village shall not appear on the ballot of the next regular election is clearly erroneous. Having found that the 270 sheets of the Referendum Petition which share common headings comply with the requirements of section 70 of the Video Gaming Act and substantially comply with the requirements of 28-3 of the Election Code, we reverse the judgment of the circuit court, which affirmed the Board's decision, and reverse the Board's decision.

¶ 24    Watts argues for the first time that the petitioner failed to state a claim upon which relief can be granted. Relying upon section 28-1 of the Election Code (10 ILCS 5/28-1 (West 2016)), which limits to three the number of propositions which may be submitted to the voters in an election in a political subdivision, Watts argues that, by reason of the fact that there are presently three propositions on the ballot in Forest Park for the March 20, 2018, election, the proposition on video gaming in the Village cannot be submitted to the voters at the next regular election and, therefore, no relief can be granted to the petitioner. We disagree.

¶ 25    Watts never raised the three-proposition rule in his objections filed with the Board, nor did he raise the issue before the circuit court. As a consequence, the issue has been forfeited and cannot be raised for the first time on appeal. *Cinkus*, 228 Ill. 2d at 212-13. Forfeiture aside, we find no merit in the argument.

¶ 26    If more than three propositions are timely initiated for submission to the voters in a political subdivision at an election, the first three validly initiated propositions shall be printed on the ballot and submitted to the voters at the election. 10 ILCS 5/28-1 (West 2016). There is nothing in the record before us to indicate that the three propositions which are contained on the ballot for the March 20, 2018, election in the Village were initiated prior to the proposition on video gaming initiated by the filing of the Referendum Petition. Watts's failure to raise the three-proposition rule in his objections to the Referendum Petition filed with the Board and his failure to raise the issue before the circuit court lead us to infer that, at

the time that the Referendum Petition was filed with the Village's clerk, three other propositions had not yet been initiated.

¶ 27 Due to the passage of time from the filing of Watts's objections on December 26, 2017, and the circuit court's order of February 21, 2018, that affirmed the Board's decision which resulted in this appeal, it is impossible to remand this matter to the Board with directions to order the clerk of the Village to certify the proposition on video gaming within the Village to the proper election official for submission to the voters at the March 20, 2018, election. Having determined that the Board erroneously ordered that the public question addressed to video gaming in the Village shall not appear on the ballot of the next regular election which is scheduled for March 20, 2018, we remand this matter to the Board with directions to order the clerk of the Village to certify the proposition on video gaming within the Village to the proper election official for submission to the voters at the next regular election in the Village after March 20, 2018.

¶ 28 Circuit court judgment reversed.

¶ 29 Board decision reversed and remanded with directions.

¶ 30 JUSTICE DELORT, specially concurring:

¶ 31 I join the majority's opinion in full with two exceptions. First, I do not join the characterization of the objector's position that the Board "made no decision on whether the records examination showed that the Referendum Petition contained sufficient signatures to place the proposition on the ballot" as "patently false." *Supra* ¶ 21. The objector presented this argument while noting that the Board never reached the merits of his Rule 6 motion to invalidate additional signatures because it invalidated the entire petition on a different basis. Essentially, whether the objector's Rule 6 motion was meritorious then became moot. But the Board never made such a mootness finding in its written decision, so I agree that no remand for a Rule 6 hearing is appropriate.

¶ 32 Second, I disagree with how the majority has structured the remedy, which is to "remand this matter to the Board with directions to order the clerk of the Village to certify the proposition on video gaming within the Village to the proper election official for submission to the voters at the next regular election in the Village after March 20, 2018." The Board has no decisional authority except to declare the referendum petitions valid or invalid and to transmit that determination to the clerk when the period for judicial review has expired. See 10 ILCS 5/10-10 (West 2016); *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988); *Guerrero v. Municipal Officers Electoral Board*, 2017 IL App (1st) 170486, ¶ 13. We should instead remand the matter to the Board with instructions to declare the Referendum Petition valid and then, separately, order the Village clerk, who is a party to this case, to certify the referendum question for the next regular election in the Village after March 20, 2018, specifically, the November 6, 2018, General Election.