2022 IL App (1st) 220691-U
Order filed: June 13, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-0691

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| KELLY KING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 COEL 8 |
| | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, | ) | |
| THE ILLINOIS STATE BOARD OF ELECTIONS | ) | |
| SITTING AS AN ILLINOIS STATE ELECTORAL | ) | |
| BOARD, IAN K. LINNNABARY, CASANDRA | ) | |
| B. WATSON, WILLIAM J. CADIGAN, LAURA | ) | |
| K. DONAHUE, TONYA L. GENOVESE, | ) | |
| CATHERINE S. MCCRORY, WILLIAM M. | ) | |
| MCGUFFAGE, and RICK S. TERVEN, SR., | ) | |
| Individually and as Members of the ILLINOIS | ) | |
| STATE ELECTORAL BOARD, ILLINOIS | ) | |
| STATE BOARD OF ELECTIONS EXECUTIVE | ) | |
| DIRECTOR BERNADETTE M. MATTHEWS, | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS | ) | |
| GENERAL COUNSEL MARNI MALOWITZ, | ) | |
| HEARING OFFICER BARBARA GOODMAN, | ) | |
| CANDIDATE'S CONTACT PERSON CLEM | ) | |
| BALANOFF, and CANDIDATE JONATHAN L. | ) | |
| JACKSON, | ) | Honorable |
| | ) | Maureen Ward Kirby, |
| Respondents-Appellees. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

No. 1-22-0691

¶ 1    *Held:*  We dismissed petitioner's appeal in this election case for lack of subject matter jurisdiction where she failed to strictly comply with the service requirements of the Election Code.

¶ 2    Petitioner, Kelly King, filed an objection to the nomination papers of Jonathan L. Jackson, a Democratic Party candidate for the office of U.S. Representative for the First Congressional District of Illinois. Petitioner contended that Jackson failed to indicate on his nomination papers whether he lived in a city, village, or unincorporated area and she requested that his name not be printed on the Democratic Party ballot for the June 28, 2022, general primary. The Illinois State Board of Elections (Board) overruled the objection and certified Jackson as a candidate, allowing his name to remain on the ballot. Petitioner filed a petition for judicial review in the circuit court, which dismissed the matter for lack of subject matter jurisdiction. The court further found that even if it had jurisdiction, it would affirm the Board. Petitioner now appeals the circuit court's order. For the reasons that follow, we dismiss for lack of subject matter jurisdiction.

¶ 3    Using standard forms issued by the Board, Jackson filed a Statement of Candidacy for the office of U.S. Representative for the First Congressional District in March 2022 as well as 302 signature sheets containing the signatures and addresses of registered voters in the district. The Statement of Candidacy was a pre-printed form stating:

"I, ____ (Name of Candidate) being first duly sworn (or affirmed), say that I reside at _____, in the City, Village, Unincorporated Area of _____ (if unincorporated, list municipality that provides postal service) Zip Code ____, in the County of ____, State of Illinois; that I am a qualified voter therein and a qualified Primary voter of the ____Party; that I am a candidate for Nomination to the office of ____in the ____District, to be voted upon at the primary election to be held on ____ (date of election) and that I am legally qualified (including being the holder of any license that may be an eligibility requirement

- 2 -

for the office to which I seek the nomination) to hold such office and that I have filed (or I will file before the close of the petition filing period) a Statement of Economic Interests as required by the Illinois Governmental Ethics Act and I hereby request that my name be printed upon the official _____Party Primary ballot for Nomination for such office."

¶ 4    Jackson filled out the Statement of Candidacy, specifying that he was a qualified primary voter of the Democratic Party and requesting that his name be printed on the official Democratic Party primary ballot for the June 28, 2022, election for U.S. Representative for the First Congressional District. Jackson listed his address as: "6828 SOUTH CONSTANCE, in the City, Village, Unincorporated Area of CHICAGO (if unincorporated, list municipality that provides postal service) Zip Code 60649, in the County of COOK, State of Illinois."

¶ 5    The petition sheets were pre-printed forms stating above the place for signatures:

"We, the undersigned, members of and affiliated with the ____ Party and qualified primary electors of the ____ Party, in the ____ Congressional District of the State of Illinois, do hereby petition that ____, who resides at ____ in the City, Village, Unincorporated Area of ____ (if unincorporated, list municipality that provides postal service) Zip Code ____ County of ____ and State of Illinois, shall be a candidate of the ____Party for the nomination for the office of REPRESENTATIVE IN CONGRESS of the State of Illinois, for the ____ Congressional District to be voted for at the primary election to be held on ____ (date of election)."

¶ 6    Jackson filled out the signature sheets, specifying that he was seeking the Democratic Party nomination for the office of U.S. Representative for the First Congressional District to be voted on at the June 28, 2022, primary election. Jackson listed his address as: "6828 SOUTH

CONSTANCE in the City, Village, Unincorporated Area of CHICAGO (if unincorporated, list municipality that provides postal service) Zip Code 60649 County of COOK and State of Illinois."

¶ 7 Petitioner filed an objection to Jackson's nomination papers with the Board, arguing that his name should be removed from the Democratic Party ballot for the June 28, 2022, primary election because in his Statement of Candidacy and in his signature sheets he failed to specifically indicate whether he lived in a city, village, or unincorporated area. Petitioner argued that when listing his residence as "6828 SOUTH CONSTANCE in the City, Village, Unincorporated Area of CHICAGO," Jackson should have marked, underlined, or circled either "City," "Village," or "Unincorporated Area of Chicago," and that his failure to do so invalidated all of the signatures on his signature sheets and required the removal of his name from the Democratic Party primary ballot.

¶ 8 A case management conference was held before a hearing officer on March 29, 2022. Petitioner appeared *pro se* and Jackson appeared through Clem Balanoff. The parties were given the opportunity to file motions. Jackson subsequently filed a motion to strike and dismiss petitioner's objections, arguing that there is no requirement that a candidate must encircle, mark, or underline the pre-printed "City, Village, Unincorporated Area" section on either the Statement of Candidacy or the signature sheets. Petitioner filed a motion for a change of hearing officer, alleging that the hearing officer had engaged in an improper *ex parte* communication with Jackson.

¶ 9 On April 8, 2022, the hearing officer held a hearing on petitioner's motion and asked the parties to identify themselves. The following colloquy ensued:

"PETITIONER: Kelly King, the objector.

HEARING OFFICER: Ok.

BALANOFF: Clem Balanoff. I work with the campaign. And I think [Jackson] may have a lawyer here with him.

JACKSON: Yes.

EVERLY: Yes. Fred Everly.

HEARING OFFICER: Ok.

BALANOFF: Does he have to file an appearance? I'm not sure.

HEARING OFFICER: He does. If he's going to be speaking, he does have to file an appearance.

EVERLY: Ok. If I can file my appearance and stand here, I would be willing to do so right now."

¶ 10     Balanoff and Jackson proceeded to give sworn testimony denying any *ex parte* communication between Jackson and the hearing officer. Following their testimony, the hearing officer denied petitioner's motion and then engaged in the following discussion with the parties:

"HEARING OFFICER: We then get to the substance of the case, which is the allegations contained in the objector's petition. Ms. King, it is your objection. So if you'd like to move forward with whatever it is that you are alleging in your objector's petition, *** you can do so now.

PETITIONER: I have an objection to Jonathan Jackson about his nomination papers because they are not filled out correctly for the selection of city, village, or unincorporated area in his address or his Statement of Candidacy and his nomination petitions." ***

\* \* \*

HEARING OFFICER: Ok. *** I'm not sure who is speaking today. Is it Mr. Balanoff or is it Mr. Everly?

EVERLY: I would just say for the record that we object and deny all of her claims on the record; and that Mr. Jackson has more than complied with the requirements of the Election Code and all the ballots and petitions that he's turned in with regards to all of the information that was provided on each petition, every signature, and everything that was submitted within those documents.

* * *

BALANOFF: I would just like to add that we did file a motion to strike and dismiss."

¶ 11 The hearing officer stated that she would take the case under advisement, including the motion to strike and dismiss.

¶ 12 On April 12, 2022, the hearing officer sent the following email to Balanoff: "[N]otwithstanding your appearance in this matter on behalf of the Candidate, it has come to my attention that you may not be a licensed attorney in the State of Illinois. Kindly provide proof by 5:00 p.m. tomorrow as to your status as a licensed attorney."

¶ 13 On April 13, 2022, Balanoff sent the following email to the hearing officer: "I am not an attorney, nor have I represented myself as such in any capacity. Attorney Frederic Everly represents the candidate, Jonathan Jackson. As a point of reference, I am the contact person when [Jackson] filed his petitions with the State Board of Elections in Springfield."

¶ 14 The hearing officer subsequently filed her written report and recommended decision. The hearing officer found that by filing an appearance on behalf of Jackson and appearing at the subsequent hearings, Balanoff violated Rule 3a of the Board's Rules of Procedure, which states:

"Who may appear. The candidate or objector may appear on their own behalf and participate in any proceeding before the Board or may appear by an attorney licensed to practice law in the State of Illinois. Non-attorneys other than a party appearing *pro se* shall not appear or participate (including the offering of any argument or advocating a position to the Board, any counsel to the Board, or the Board's appointed Hearing Officer) in the Board's hearings on behalf of either the candidate or the objector, except that non-attorneys may participate as observers or coordinators at any records examination on behalf of any party."

¶ 15    The hearing officer stated:

"It is unclear why Mr. Balanoff, as a non-attorney, entered an appearance in this matter and participated in the proceedings in any way in contravention of Rule 3 of the Board's Rules of Procedure. It is also unclear why an attorney for Mr. Jackson did not enter an appearance until the final hearing date. To the extent that any of Mr. Balanoff's comments at any of the proceedings constituted legal arguments made on behalf of the Candidate, they are hereby stricken. Additionally, the Candidate's Motion to Strike and Dismiss that was transmitted by Mr. Balanoff but signed by the Candidate is also hereby stricken as it was not accompanied by a Certificate of Service to confirm with whom the Motion was filed."

¶ 16    The hearing officer then proceeded to examine the merits of petitioner's objection to Jackson's nomination papers for failing to encircle, mark or underline the pre-printed "City, Village, Unincorporated Area" section on the Statement of Candidacy and on the signature sheets. The hearing officer cited Section 7-10 of the Election Code, which provides in relevant part that a petition for nomination must include a Statement of Candidacy which:

"shall set out the address of such candidate, the office for which he is a candidate, shall state that the candidate is a qualified primary voter of the party to which the petition relates and is qualified for the office specified *** , shall state that he has filed (or will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act, shall request that the candidate's name be placed upon the official ballot, and shall be subscribed and sworn to by such candidate before some officer authorized to take acknowledgment of deeds in the State." 10 ILCS 5/7-10 (West 2022).

¶ 17 Section 7-10 further provides that the petition must include signature sheets containing "above the space for signatures an appropriate heading giving the information as to name of candidate or candidates, in whose behalf such petition is signed; the office, the political party represented and place of residence." *Id*.

¶ 18 The hearing officer found that "[a] review of the Candidate's nominating papers establishes that Candidate's name and address are clearly set out on the Statement of Candidacy and clearly set out on the heading of the [signature] sheets. Accordingly, the nominating papers are, in fact, in conformity with the requirements of Section 7-10 of the Illinois Election Code." The hearing officer recommended that petitioner's objection be overruled and that Jackson's name appear on the ballot at the June 28, 2022, general primary election.

¶ 19 On April 21, 2022, the Board adopted the hearing officer's findings, overruled petitioner's objection to Jackson's nomination papers, and stated that "the name of Candidate Jonathan L. Jackson SHALL be certified for the June 28, 2022 General Primary Election ballot."

¶ 20 Petitioner filed a petition for review in the circuit court on April 22, 2022. Petitioner claims that three days later on April 25, 2022, she went to the Daley Center and submitted 14 copies of

her petition for judicial review with the clerk of the court, with the understanding that the clerk would serve the 14 copies on all the respondents by certified mail. At a May 3, 2022, status hearing, though, the circuit court informed petitioner that none of the respondents had been served with her petition for judicial review. The court continued the case for a status hearing on May 10 "to find out what has happened to the service to the Respondents in this case."

¶ 21 Petitioner contends that she contacted a supervisor at the clerk's office, who informed petitioner that she had mailed out all the petitions on April 25 and 26. Petitioner demanded the tracking numbers, which revealed that one petition had been mailed to the Board chairman on April 26 and received on May 2; none of the other petitions had been mailed to the other Board members or to Jackson. The USPS had created mailing labels for the other Board members and Jackson but had not received the petitions from the clerk's office and so those petitions never were mailed.

¶ 22 Petitioner moved the court to have the clerk "recopy and resend the Petitioner's Petition for Judicial Review to all Respondents" and set a new hearing date for the petition to be heard once all the respondents are served.

¶ 23 On May 16, 2022, the circuit court heard arguments by the parties[1] on petitioner's petition for judicial review and entered an order finding that it lacked subject matter jurisdiction. In support, the court cited section 10-10.1(a) of the Election Code, which states:

> "Except as otherwise provided in this Section, a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking

---

[1] No transcript of the hearing is contained in the record on appeal.

judicial review must file a petition with the clerk of the court and must serve a copy of the petition upon the electoral board and other parties to the proceeding by registered or certified mail within 5 days after service of the decision of the electoral board as provided in Section 10-10. The petition shall contain a brief statement of the reasons why the decision of the board should be reversed. The petitioner shall file proof of service with the clerk of the court." 10 ILCS 5/10-10.1(a) (West 2022).

¶ 24    The circuit court also cited *Bey v. Brown*, 2015 IL App (1st) 150263, which held:

"Section 10-10.1(a) outlines four explicit prerequisites to establish subject matter jurisdiction. Specifically, the party seeking judicial review must: (1) 'file a petition with the clerk of the court *** within 5 days" after the Board's service of its decision; (2) serve copies of the petition 'upon the electoral board and other parties to the proceeding by registered or certified mail within 5 days' after the Board's service of its decision; (3) state in that petition 'why the decision of the board should be reversed'; and (4) 'file proof of service with the clerk of the court.'" *Id.* ¶ 48 (quoting 10 ILCS 5/10-10.1(a) (West 2012)).

¶ 25    In finding that it lacked subject matter jurisdiction, the circuit court stated:

"Candidate argued that he had not been served within 5 days of the April 21st decision and that as of May 16 still had not been served by certified mail with the petition for judicial review. Objector Ms. King stated that she had the clerk of the court send certified mail to the Candidate at the address of 6828 S. Constance Chicago IL 60649, with a tracking number of 92148901066154000175280103. As of the 3 p.m. hearing on May 16, 2022, the Candidate had still not been served. The Court asked the objector to track the tracking number for the mailing to the Candidate and the information came back 'not available.'

As such, there is no evidence in the court file that objector served the Candidate within 5 days after the Board's decision or that objector filed a proof of service with the clerk of the court evidencing proper service within the required time, that is by April 26, 2022. Therefore, the objector has failed to comply with *** Section 10-10.1 of the Election Code and, as a result, has deprived this court of subject matter jurisdiction to hear this matter."

¶ 26    The circuit court then considered petitioner's motion for the court to order the clerk to recopy and resend her petition for judicial review to all the respondents and set a new hearing date. The court denied the motion, stating "there is no compliance with Section 10-10.1 and it is too late for the objector to correct this fatal error as the 5 day period to serve the candidate has passed."

¶ 27    Finally, the circuit court determined that even if it considered the merits of the petition it still would affirm the Board. The court found that "[t]he candidate used the form provided by the [Board], the candidate's full and complete address is listed and Section 7-10 has been complied with as there is no mandatory requirement to circle or underline village, city or unincorporated area."

¶ 28    The circuit court also rejected petitioner's argument for reversal based on Balanoff's appearance before the hearing officer in violation of Rule 3a of the Board's Rules of Procedure. The court found no cause for reversal because the hearing officer had "struck from consideration any legal arguments advanced by Mr. Balanoff."

¶ 29    Petitioner now appeals from the circuit court's order.

¶ 30    First, we consider whether petitioner's failure to comply with section 10-10.1(a) of the Election Code deprived the circuit court, and this court, of subject matter jurisdiction. Review is *de novo*. *Bey*, 2015 IL App (1st) 150263, ¶ 43.

¶ 31    As correctly noted by the circuit court in this case, a party contesting a decision of an electoral board must meet all four requirements set forth in section 10-10.1(a) to establish subject matter jurisdiction. *Id.* ¶ 48. Strict compliance with section 10-10.1(a) is required. *Id.* ¶ 51.

¶ 32    Two of the requirements set forth in section 10-10.1(a) for the establishment of subject matter jurisdiction are that petitioner serve copies of the petition for judicial review upon the Board and other parties to the proceeding by registered or certified mail within five days after the Board's service of its decision, and that petitioner file proof of service with the clerk of the court. *Id.* ¶ 48. Service on the Board is effectuated either by service by registered or certified mail on each of the individual Board members or by service by registered or certified mail on the Board as an entity. See *Solomon v. Ramsey*, 2015 IL App (1st) 140339, ¶¶ 18-19. Petitioner admits on appeal that while one copy of the petition was sent by certified mail to the Board Chairman on April 26, 2022, and received on May 2, 2022, none of the other Board members, the Board as an entity, or the other party to the proceeding, Jackson, was served by certified mail with a copy of the petition within five days of the April 21, 2022, Board decision (*i.e.*, by April 26). Further, the clerk's "case summary" sheets contained in the record on appeal states that as of May 3, 2022, neither the Board, any of the Board members, nor Jackson, had been served by certified mail with the petition for judicial review. Petitioner's failure to strictly comply with section 10-10.1(a) by not serving Jackson, the Board, or all the individual Board members with the petition for judicial review by April 26, 2022, deprives both the circuit court and this court of jurisdiction and necessitates dismissal of the appeal. See *e.g.*, *Bey*, 2015 IL App (1st) 150263, ¶¶ 41-59 and *Hough v. Will County Board of Elections*, 338 Ill. App. 3d 1092, 1093-94 (2003) (each dismissing the petitioner's appeal for failing to comply with section 10-10.1(a)).

¶ 33    Petitioner argues, though, that we should excuse the jurisdictional defect because on April 22, 2022 (within the five-day period for serving the petition for judicial review), she went to the Daley Center and gave the clerk 14 copies of the petition and was informed that the clerk's office would serve all the necessary parties (*i.e.*, the respondents) with the petition by certified mail and would provide proof of service to the court. The clerk's office did not timely serve the respondents.

¶ 34    Petitioner contends that her petition should not be dismissed based on the clerk's "outrageous" failure to keep its promise to her and timely serve the respondents. In effect, petitioner's argument is that we should ignore the jurisdictional defect in the failure to properly and timely serve the respondents and hold that her good-faith effort in relying on the clerk's office to effectuate service constituted substantial compliance with section 10-10.1(a). However, as discussed, section 10-10.1(a) requires strict compliance and petitioner provides no support for her argument that the failure to strictly comply with section 10-10.1(a)'s service requirements by timely serving the respondents and providing proof of such service with the clerk of the court may be excused here.

¶ 35    Even if we had subject matter jurisdiction, we would affirm the Board. On appeal, we review the Board's, rather than the circuit court's, decision. *Let Forest Park Vote on Video Gaming v. Village of Forest Park Municipal Officers Electoral Board*, 2018 IL App (1st) 180391, ¶ 7. In the instant case, the facts are not in dispute; rather, it is the legal effect of those facts which is at issue. Therefore, we are presented with a mixed question of law and fact to which we apply the "clearly erroneous" standard of review. *Id.* A decision is clearly erroneous when we are left with the definite and firm conviction that a mistake has been committed. *Id.*

¶ 36    We are not left with the definite and firm conviction that the Board was mistaken in overruling petitioner's objection to Jackson's nomination papers based on his failure to circle,

underline, or otherwise mark the pre-printed "City, Village, Unincorporated Area" sections of the Statement of Candidacy and signature sheets. Initially, we note:

> "[s]trict compliance with the requirements of the Election Code is required when the requirements of the statute 'contribute substantially to the integrity of the election process.' [Citation.] However, substantial compliance is sufficient when *** a deviation from the Election Code is minor or technical in nature and does not affect the legislative intent to guarantee a fair and honest election." *Id.*, ¶ 20.

¶ 37    In the instant case, Jackson not only substantially complied with section 7-10's requirement that his Statement of Candidacy "shall set out the address of such candidate" and that his signature petitions set out his place of residence above the space for signatures (see 10 ILCS 5/7-10 (West 2022)), but he strictly complied with those requirements. Jackson used the standard forms issued by the Board for his Statement of Candidacy and for his signature sheets, and on each he filled in the underlined sections and listed his residence as "6828 SOUTH CONSTANCE in the City, Village, Unincorporated Area of CHICAGO *** Zip Code 60649." Neither section 7-10 of the Election Code nor the standard forms provided by the Board for his Statement of Candidacy and for his signature sheets contains any instructions requiring Jackson to circle, underline or otherwise mark the pre-printed "City, Village, Unincorporated Area" sections of the forms when listing his residence. Accordingly, Jackson's Statement of Candidacy and signature sheets listing his address/place of residence with his street address in Chicago along with his zip code were in complete compliance with section 7-10 and the Board's decision overruling petitioner's objection was not clearly erroneous.

¶ 38    We also reject petitioner's argument for reversal based on Balanoff's appearance before the hearing officer in violation of Rule 3a of the Board's Rules of Procedure. The Board

determined that the best way to remedy Balanoff's violation of Rule 3a was to strike all his legal arguments made in his appearances before the hearing officer. Petitioner cites no case law indicating that the Board erred in its interpretation of its own rules or in the remedy it devised for Balanoff's violation thereof, nor does she show how she was prejudiced thereby.

¶ 39    In her reply brief, petitioner alludes to an incident allegedly occurring at a candidate's forum in Frankfort, Illinois, on June 7, 2022, wherein Jackson and Balanoff approached her and spoke to her in an "intimidating" manner. Petitioner asks that Jackson's name be removed from the Democratic Party ballot for the June 28, 2022, general primary election based on Jackson's aforesaid conduct at the June 7 candidate's forum. Even if we had subject matter jurisdiction, this issue is not properly before us. Our appeal is limited to reviewing whether the Board's April 21, 2022, decision overruling petitioner's objection to Jackson's nominating papers based on his failure to mark, circle or underline the pre-printed "City, Village, Unincorporated Area" section on the Statement of Candidacy and signature sheets was clearly erroneous.

¶ 40    For all the foregoing reasons, we dismiss petitioner's appeal for lack of subject matter jurisdiction.

¶ 41    Dismissed.