2026 IL App (1st) 260151-U
Order filed: February 20, 2026

FIRST DISTRICT
THIRD DIVISION

No. 1-26-0151

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JOSEPH SEVERINO and RANTCH ISQUITH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioners-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| The ILLINOIS STATE BOARD OF ELECTIONS, | ) | 2026-COEL-000004 |
| sitting as The STATE OFFICERS ELECTORAL | ) | |
| BOARD, and its Members, Laura K. Donahue (chair), | ) | |
| Rick S. Terven, Sr. (vice chair), Jennifer M. Ballard | ) | |
| Croft, Cristina D. Cray, Tonya L. Genovese, | ) | |
| Catherine S. McCrory, Jack Vrett, and Casandra B. | ) | |
| Watson, The ILLINOIS STATE BOARD OF | ) | |
| ELECTIONS, and TERRENCE NEWSOME, | ) | Honorable |
| | ) | Marcia Conway, |
| Respondents-Appellees. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We confirm the Board's decision sustaining respondent's objections to petitioners' nomination papers for nomination to the offices of Governor and Lieutenant Governor and ordering that their names not be certified for the March 17, 2026, general primary election ballot.

¶ 2    Petitioners, Joseph Severino and Rantch Isquith, appeal the circuit court's January 27, 2026, order confirming the January 8, 2026, order of the State Officers Electoral Board (Board), which sustained respondent's, Terrence Newsome's, objections to petitioners' nomination papers

for nomination to the offices of Governor and Lieutenant Governor and ordered that their names not be certified for the March 17, 2026, general primary election ballot. We affirm the circuit court and confirm the Board.

¶ 3 Petitioners filed their nomination papers for the Republican nominations for Governor and Lieutenant Governor on November 3, 2025. Petitioners' nomination papers contained the alleged signatures of 6,336 qualified primary voters in support thereof. Respondent filed his verified objections to petitioners' nomination papers on November 10, 2025, requesting that their names not appear on the March 17, 2026, general primary election ballot because 2,520 of the voter signatures were not genuine and/or the signers were not registered to vote at the addresses shown.

¶ 4 Petitioners filed a motion to strike and dismiss respondent's verified objections on the basis that they were not filed in good faith, as respondent "did not at any point view voter signatures at the State Board of Elections to make comparisons" to the signatures on the nomination papers.

¶ 5 The Board conducted a records examination on November 25, 2025, and sustained respondent's objections to 1,588 of petitioners' voter signatures, leaving them with 4,748 signatures, which was 252 signatures below the 5,000 required for statewide candidates. See section 7-10(a) of the Election Code (Code) (10 ILCS 5/7-10(a) (West 2024)) ("if a candidate seeks to run for statewide office or as a delegate or alternate delegate to a national nominating convention elected from the State at-large, then the candidate's petition for nomination must contain at least 5,000 but not more than 10,000 signatures").

¶ 6 In accordance with section 10-10 of the Code (*id.* § 10-10), the Board adopted rules of procedure which authorized a party who disagreed with its ruling to file a so-called Rule 9 motion "taking exception" to the ruling within three business days. See Rules 7 and 9 of the Rules of Procedure for the State Board of Elections, adopted November 18, 2025. Rule 9g provides that

within the three-day motion period, the party taking exception also was required to produce any supporting evidence showing that the ruling was made in error. *Id.* R. 9g. The three-day period for producing the supporting evidence would only be extended by the Board "for good cause shown." *Id.*

¶ 7    In the instant case, due to the Thanksgiving holiday, the three-day period for filing the Rule 9 motion and supporting evidence ended on December 2, 2025. Petitioners timely filed their Rule 9 motion on December 2, 2025, challenging the Board's rulings invalidating 70 specific voter signatures. Petitioners argued that 52 of the signatures were invalidated by the Board because it found that the signers were not registered at the listed addresses. Petitioners argued that those signatures should be restored because the signers were in fact registered at the listed addresses. Another 17 signatures were invalidated by the Board because it found that those signatures were listed next to incomplete addresses. Petitioners argued those 17 signatures should be restored because the listed addresses were sufficiently identifiable pursuant to the Board's own rules. Petitioners argued that the final signature should be restored because the Board incorrectly ruled that it was a duplicate signature. Petitioners did not file any supporting evidence but sought an extension of the three-day filing period to file "Rule 9 Subpoenas to get registration records to show that voters incorrectly listed as not registered at their address are in fact registered at their address." Petitioners also realleged that respondent's objections to the signatures should be dismissed because the objections were made in bad faith.

¶ 8    The hearing officer entered a case management order on December 3, 2025, ruling that petitioners had failed to establish good cause to extend the Rule 9 evidence submission deadline. The hearing officer gave the parties leave, though, "to put any argument relating to this requested extension on the record" at the December 16 hearing. The hearing officer further stated that the

denial of the request for an extension did not prevent petitioners from requesting the issuance of a Rule 9 subpoena or submitting voter records or attempting to establish a complete record in the event that the Board later determined that the denial of the extension was erroneous.

¶ 9    On December 13, 2025, petitioners submitted a list of 148 voter signatures which were allegedly wrongly invalidated by the Board due to the signers not being registered to vote at the addresses shown. In support of their claim of error, petitioners tendered scans of printouts from the Board's own "Registration Lookup" website[1] showing that the signers in question actually were registered to vote at the addresses shown. Petitioners also provided a list of 50 additional voter signatures which were allegedly wrongly invalidated by the Board due to incomplete addresses. In support, petitioners tendered evidence showing that the addresses disclosed the signers' street and house numbers, thereby substantially complying with the requirement in section 10-4 of the Code that each signer provide his residence address. See 10 ILCS 5/10-4 (West 2024).

¶ 10    On December 16, 2025, the hearing officer held a hearing on petitioners' Rule 9 motion. At the hearing, the hearing officer noted that it previously had denied petitioners' motion to extend the three-day deadline for filing evidence but allowed the parties to make any further arguments on the record. Petitioners argued that given the thousands of signatures which they needed to review in such a short period of time, they had good cause for seeking an extension of time within which to review the signatures and to obtain evidence showing the validity thereof. Respondent countered that petitioners had failed to show due diligence in filing their supporting evidence. The hearing officer again denied petitioners' motion to extend the three-day period for good cause, ruling that it would not consider the validity of the 198 voter signatures which were untimely

---

[1]    *Registration Lookup*, Ill. Online Voter Application, State Board of Elections, https://ova.elections.il.gov/RegistrationLookupResult.aspx (last visited February 19, 2026).

identified on December 13, 2025. The hearing officer stated that it would only consider the validity of the 70 voter signatures presented in the Rule 9 motion that had been timely filed on December 2.

¶ 11   The hearing officer first considered petitioners' argument that respondent's objections to the 70 voter signatures were made in bad faith because respondent never compared those signatures with the signatures on their voter registration cards. The hearing officer heard testimony from respondent that he used a team of persons to review the voter signatures prior to filing the objections. First they checked the signatures against the GOP voter list and identified obviously fraudulent signatures such as "Homer Simpson." The team subsequently went to Springfield and compared the signatures and addresses on the nomination papers with signatures and addresses on voter registration cards to determine whether they matched. Petitioners presented no evidence refuting respondent's testimony that his team had, in fact, compared the signatures on the nomination papers with the signatures on their voter registration cards. Accordingly, the hearing officer found that respondent's objections to the signatures were not made in bad faith.

¶ 12   The hearing officer then considered the validity of each of the 70 voter signatures which were identified in the timely Rule 9 motion, restored two of them, and ruled that the remaining signatures were properly invalidated.

¶ 13   On January 8, 2026, the Board entered a written decision adopting the findings of fact, conclusions of law, and recommendations of the hearing officer and ordered that petitioners' names shall not be certified for the March 17, 2026, general primary election ballot.

¶ 14   On January 12, 2026, petitioners filed a petition for judicial review of the Board's decision sustaining respondent's objection to their nominating papers. Petitioners again argued that respondent's objections to their signatures of registered voters were not made in good faith because

respondent never compared those signatures with the signatures on their voter registration cards. Petitioners also argued that their constitutional right of access to the ballot was violated when the Board refused to extend the three-day period for filing their evidence in support of their Rule 9 motion. Finally, petitioners contended that respondent had failed to properly serve candidate Isquith with the objections to their nominating papers.

¶ 15   On January 27, 2026, the circuit court entered an order confirming the January 8, 2026, decision of the Board and ordered that petitioners' names not be certified for the March 17, 2026, general primary election ballot. Petitioners appeal. We review the Board's, rather than the circuit court's, decision. *Let Forest Park Vote on Video Gaming v. Village of Forest Park Municipal Officers Electoral Board*, 2018 IL App (1st) 180391, ¶ 7.

¶ 16   Petitioners argue that the Board wrongly invalidated 148 of their signatures on the basis that the signers were not registered to vote at the addresses shown, when in fact those 148 signers were registered to vote at their listed addresses. Petitioners also argue that the Board wrongly invalidated an additional 50 signatures on the basis that the addresses provided were incomplete, when in fact the listed addresses provided enough identifying information so as to substantially comply with the Code. Petitioners acknowledge that they did not timely identify those 198 signatures and file supporting evidence showing their validity within the three-day time frame provided by Rule 9. However, they contend that the Board erred by denying their motion to extend the deadline for good cause, especially considering that their access to a place on the ballot is a "substantial" constitutional right (*Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 460 (2008)) subject to strict scrutiny under *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). Petitioners argue that the Board's refusal to extend the deadline did not survive strict scrutiny because it was not narrowly tailored to advance a

compelling state interest. Petitioners further contend they had a reasonable excuse for not timely providing the signatures and supporting evidence because the three-day time frame spanned the Thanksgiving holiday, "making it extremely difficult for any candidate to get volunteers to pore over the 563 pages of Records Examination results and search for voters whose signatures were invalidly stricken." Petitioners also assert that respondent would have suffered no surprise or prejudice if the late filing had been allowed.

¶ 17    However, even *if* petitioners' arguments are correct that the Board should have granted their request for an extension and restored the 198 signatures, they still would be 54 signatures short of the 5,000 signatures required to run as statewide candidates. We come to this conclusion because petitioners' nomination papers contained the alleged signatures of 6,336 qualified primary voters and the Board sustained respondent's objections to 1,588 of them, leaving petitioners with 4,748 signatures. If we restored the 198 signatures and added them back, petitioners would have 4,946 signatures, which is 54 short of the 5,000 minimum required under section 7-10(a) of the Code. See 10 ILCS 5/7-10(a) (West 2024). Petitioners acknowledge the necessity of restoring at least an additional 54 signatures, and so they next argue that *all* 1,588 signatures for which objections were sustained should be restored because respondent acted in bad faith in making those objections. If we restored all 1,588 signatures, petitioners would have more than the 5,000 signatures required for statewide office.

¶ 18    Petitioners' argument for restoration of all 1,588 signatures is not supported by the record, though. Petitioners' contention is that respondent acted in bad faith by challenging the genuineness of the voter signatures on their nomination papers without actually having compared them to the signatures on the voter registration cards. However, respondent testified to the contrary, explaining how he had a team of persons who went to Springfield and compared the signatures on the

nomination papers with the signatures on the voter registration cards. Petitioners argue on appeal that respondent was "confused" and that no such signature comparison by his team occurred; petitioners contend that the only signature comparison was conducted by *the Board* on November 25, 2025, and *not* by respondent or his team prior to filing the objections. Petitioners' argument is unsupported by any evidence and is contradicted by respondent's unimpeached testimony at the hearing, which was found credible by the hearing officer and by the Board. It is the responsibility of the Board, as the administrative agency, to weigh the evidence, determine the credibility of the witnesses, and resolve conflicts in the testimony, and we will not reverse the Board's factual findings unless they are against the manifest weight of the evidence. *Matos v. Cook County Sheriff's Merit Board*, 401 Ill. App. 3d 536, 542 (2010). Reversal is not required here, as respondent's testimony supports the Board's factual finding that respondent's team performed a signature comparison and, as such, that his objections to petitioners' signatures were not made in bad faith. In the absence of any bad faith, petitioners' argument for restoration of all 1,588 signatures under discussion fails. Without those 1,588 signatures, petitioners fall short of the 5,000-signature requirement for statewide offices.

¶ 19    Petitioners further contend that respondent acted in bad faith by accusing 15 of petitioners' circulators of having committed fraud based on the "high rate of non-genuine signatures." Petitioners argue that respondent's claim of fraud was in bad faith where he never actually compared the signatures on the nominating papers with the signatures on the voter registration cards. This is essentially a rehash of the argument that respondent never conducted a signature comparison prior to making his objections. As discussed, respondent gave uncontradicted testimony that his team in fact made such a signature comparison prior to making the objections

and accusing the circulators of committing fraud. Such testimony supports the Board's finding that respondent did not act in bad faith.

¶ 20    Petitioners also argue for reversal because candidate Isquith was never served with respondent's objections. We reject petitioners' argument because counsel filed written appearances on behalf of both candidate Severino and candidate Isquith before the Board and made arguments on their behalf during the hearing, thereby waiving any objection to personal jurisdiction. See *Municipal Trust and Savings Bank v. Moriarty*, 2021 IL 126290, ¶ 25.

¶ 21    For all the foregoing reasons, we confirm the decision of the Board sustaining respondent's objections to petitioners' nomination papers for nomination to the offices of Governor and Lieutenant Governor and ordering that their names not be certified for the March 17, 2026, general primary election ballot.

¶ 22    The order of the circuit court, confirming the Board's decision, is affirmed.

¶ 23    Circuit court affirmed; Board's decision confirmed.